## JONES & LAUGHLIN STEEL CORPORATION v. NATIONAL LABOR RELATIONS BOARD.

### No. 10992.

Circuit Court of Appeals, Fifth Circuit.

Jan. 18, 1945.

Rehearing Denied March 12, 1945.

John C. Bane, Jr., of Pittsburgh, Pa., and Alfred C. Kammer, of New Orleans, La., for petitioner.

Alvin J. Rockwell, Gen. Counsel, National Labor Relations Board, Malcolm F. Halliday, Associate Gen. Counsel, National Labor Relations Board, and William F. Scharnikow, Senior Atty., National Labor Relations Board, all of Washington, D. C., for respondent.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

Over opposition and after full hearing of the Jones & Laughlin Steel Corporation, which owns and operates ten large tugs, and fleets of barges, upon the Ohio and Mississippi Rivers and their tributaries, the

834

National Labor Relations Board established as appropriate a bargaining unit which included masters of the ships along with other licensed deck officers and pilots. 47 N.L.R.B. 1272. The engineers and seamen already had separate units and bargaining representatives. The shipowner refused to recognize or bargain with the representative chosen by the new unit and certified by the Board, to wit, Local 25 of the National Organization of Masters, Mates and Pilots of America. After due hearing this refusal was held an unfair labor practice, and bargaining was ordered. This order is now sought to be set aside on the legal contention that the Board has not power or discretion to include in the bargaining unit the masters, along with the licensed mates and pilots, because the masters are in the law the representatives of the owners aboard the ship and owe the owners an undivided allegiance and fidelity. The Board prays for enforcement. A subordinate question is whether we should direct the Board to take evidence, said to be newly discovered, that the three unions now representing the whole ship's personnel are acting in concert, and intend to insist on a collective agreement with the licensed officers as nearly as possible identical in form and substance with those already made for the engineers and for the seamen; and in all negotiations and disputes will unite in support of each other.

■ The chief function of the National Labor Relations Board is to deal with unfair labor practices under Section 10 of the National Labor Relations Act, 29 U.S. C.A. § 160. These unfair labor practices, defined in Section 8, 29 U.S.C.A. § 158, relate largely to interference with employees in organizing for collective bargaining, and to refusing to bargain with a duly selected representative of the employees. The important function of deciding what employees shall unite in selecting a bargaining representative is delegated to the Board in Section 9, 29 U.S.C.A. § 159. Subsection (b) empowers the Board to "decide in each case whether * * * the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof." The unit having been decided, subsection (c) empowers the Board to ascertain and certify, in case of dispute, what representative has been chosen by the unit. In subsection (b) there is a direction to the Board in fixing the appropriate unit to give full scope to the right of self-organi-

zation and collective bargaining and otherwise to effectuate the policies of the Act. Doubtless other established public policies and interests ought also to be considered, as was recently held in the Sixth Circuit in National Labor Relations Board v. Jones & Laughlin Steel Corporation, 146 F.2d 718. But in general the power to fix the appropriate unit is a broad one, and the right to decide is placed in the Board, without provision for a direct and immediate review. After the unit is fixed and the representative chosen, a court can refuse to enforce an order of the Board to bargain, made under Section 10, if the unit designated is unlawful, but the court should not substitute its judgment for that of the Board on a question of wisdom or convenience. Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251.

The problem of what to do with supervisory employees in fixing bargaining units is an old one. Section 2 of the Act, 29 U.S.C.A. § 152, defines the term employee as including "any employee" except agricultural laborers and domestic servants; but it also makes the term employer include "any person acting in the interest of an employer, directly or indirectly." Thus a foreman or superintendent or other supervisor may be an employee entitled to bargain collectively, but be also the employer, so that what he does or says towards helping or hindering in unionization is chargeable to the employer. Supervisory employees often have also functions in enforcing for the employer the collective contract, and in settling grievances under it. The Board has on these grounds announced the general policy of not including supervisory employees of any grade in bargaining units which include the employees under them; but in proper cases it gives the supervisors a separate unit of their own. See Matter of Godchaux Sugars, Inc., 44 N.L.R.B. 874, and especially Matter of Maryland Drydock Co., 49 N.L.R.B. 733. In the latter decision it was recognized, p. 741, that in some trades, notably the printing and maritime industries, the practice had obtained long before the Act of including supervisors in the collective bargains made for other employees. In the present case the Board said it was not departing from the principles announced in the Maryland case, but was applying the exception in maritime cases, which included not only seagoing but also inland water vessels.

 Looking into the development of this maritime practice, we find that the Board from its beginning has been including masters in a unit with the other licensed deck officers, over the shipowner's objection that the master specifically represents the owner and is charged with the responsibility of maintaining discipline. Matter of Ocean Steamship Co., 2 N.L.R.B. 588; Matter of New York and Cuba Steamship Co., 2 N.L.R.B. 595. The Board there said that masters usually become such by passing through the lower grades of licensed deck officers, and after becoming masters often sailed as mates, and that there was a long history of satisfactory collective bargaining which had included masters. Similar units were established in Seas Shipping Co., 8 N.L.R.B. 422, and Standard Oil Co. of New Jersey, 8 N.L.R.B. 936. Others followed. With this experience and these many precedents in mind, we do not see that the unit established here is shown to be impractical or unwise, and much less that it is unlawful. If further experience should prove this unit to be inappropriate, the Board can alter it.

 The other contention is that there is evidence that the three bargaining representatives of all the ship employees are about so to co-operate as to make practically one, and that it is against law and public policy to have the owner's deck officers in the same unit with the seamen they command. This was in effect held in the case of ferry boats, one judge dissenting, in N.L.R.B. v. Delaware-New Jersey Ferry Co., 3 Cir., 128 F.2d 130. Assuming the correctness of that decision, it is not in point, for the deck officers here are in a separate unit from the engineers and seamen. The proposed évidence of co-operation shows only an anticipation of trouble. The specific thing proposed to be proved is that the new unit will ask a contract similar, as near as may be, to that which the others now have. No reason appears why the similarity would be undesirable. If undesirable, the shipowner need not agree to it. The general fear that all classes of employees may make common cause in case of future disputes is always present because such co-operation is always possible. The new bargaining agent is affiliated with the American Federation of Labor, while the other two are affiliated with the Congress of Industrial Organizations, well-known rivals. This would not indicate that an unusual co-operation is likely. The Board formally opposes the

taking of the evidence and asserts that it is unimportant. We do not think it is definite enough to demand reopening the matter at this time. We will enter a decree refusing to set aside but enforcing the Board's order to bargain, but without prejudice to an application to the Board or to us to reopen the case should unusual difficulties in fact arise in the operation of this bargaining unit.