NATIONAL LABOR RELATIONS BOARD
v. WYANDOTTE TRANSP. CO.
No. 10359.

Circuit Court of Appeals, Sixth Circuit.
June 4, 1947.

Marcel Mallet-Prevost, of Washington, D. C. (Gerhard P. Van Arkel, Morris P. Glushien, A. Norman Somers, Leonard Appel and Ben Grodsky, all of Washington, D. C., on the brief), for petitioner.

Elroy O. Jones, of Detroit, Mich. (Elroy O. Jones, of Detroit, Mich. of counsel; Dykema, Jones & Wheat, of Detroit, Mich., on the brief), for respondent.

Before HICKS, SIMONS and MARTIN, Circuit Judges.

102

HICKS, Circuit Judge.

Petition of the National Labor Relations Board to enforce its order of April 29, 1946, directing respondent to bargain collectively with National Organization, Masters, Mates and Pilots of America, A.F.L., as the exclusive representative of the mates on its vessels. The issues are, (1) whether the first, second and third mates employed on each of respondent's four vessels, regularly sailing the Great Lakes, are "employees" within the meaning of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.; and (2) if so, whether the 12 men comprise a unit appropriate for purposes of collective bargaining. It is the Board's position that each question must be answered affirmatively.

Respondent, on the other hand, argues that the mates are licensed officers, and as executive officers of the ship do not do any manual labor, and their duties are supervisory in nature, that when on watch each is responsible for the safety of the ship and that in addition the first mate is largely responsible for the employment and discharge of unlicensed personnel and for the maintenance of the ship.

As to these duties the Board found: "The first mate is in direct charge of the hire and discharge of the unlicensed personnel, and to him the other mates make their recommendations on these subjects. In the event of incapacity or absence of a master, a mate takes over the master's position, in which he has absolute control over his ship, the cargo, and all the personnel, including the other mates, when the ship was not in port. Except for that single instance the mates have no supervisory authority over each other."

There was some evidence that a second or third mate might occasionally discharge an employee and that the first mate was usually the working boss, and that the other mates would not do anything that he thought was wrong, although on their own watches they had equal authority so far as seamen were concerned. There was evidence that although the master might issue orders directly to the other mates, he usually gave them to the first mate to be handed by him to the others.

There is no real divergence between the record and the Board's findings, except in the amount of supervision the first mate exercised over the others, but this matter is only material on the question of what is an appropriate unit.

On the first question, respondent argues further that in the 30 years it has operated ships on the Great Lakes, there has never been a period when its mates did not have free access to the top management for expression of grievances and for discussion of relations existing between licensed personnel (mates and others) and unlicensed (such as seamen). It contends that the mates have always acted directly and indirectly for management and that a need for protecting a collective bargaining right should be found before it is granted in a case like this.

Confronted with our decision in N.L.R.B. v. Packard Motor Car Co., 6 Cir., 157 F.2d 80, approving collective bargaining rights for general foremen, foremen, assistant foremen and special assignment men in the plants of the Packard Motor Car Company, respondent sets forth 11 particulars wherein the situation of the mates in this case is distinguished from that of the foremen in that case.

These distinctions come to this: The duties of mates have not changed greatly for over 30 years, except that the Director of Industrial Relations consults them with reference to conditions of employment. Mates have strictly executive positions and are a part of management and hire and discharge and have full control over unlicensed personnel, whereas the foremen are subject to rigid control of management and over the years have been relieved of responsibilities by Departments for Employment, Layout, Routing, Stock or Traffic, Time Study, Inspection, Personnel, etc. Grievances are taken up by mates and they can discharge if orders are disobeyed, whereas grievances by-pass foremen, and they can only "recommend", as to discharges, transfers, etc. Further, it is claimed foremen are more managed than managing, whereas mates are consulted by management about policies on the ship and have opportunities to express themselves. Supervisory foremen may only "recom-

mend" as to matters involving subordinate foremen, whereas the first mate has full charge of the second and third mates.

There are readily recognizable differences between the work of mates on a vessel and that of foremen in a plant, but we think that since the decision of the Supreme Court in the Packard case we are foreclosed from considering them other than differences of degree rather than of kind. That decision, affirming this court (four judges dissenting), was handed down since the hearing in this case. Packard Motor Car Co. v. N.L.R.B., 67 S.Ct. 789. It gave consideration to the question whether employees are to be barred from organization because at times they act for an employer, and the Supreme Court decided that question adversely to the Packard Company. We need go no further than to say that we are bound by that decision. The gist of it is that despite the duties of foremen, their position is adverse to that of the Packard Company in the matter of the terms of their employment. This seems to us to abolish all doubt that the mates on vessels operated by the respondent have the right to organize for bargaining purposes even though their work at times involves independent responsibility for the property of the Company and for its personnel relations.

The question remains whether the 12 mates of respondent comprise an appropriate unit for organization. Under the authority of the Packard case the answer must be that they do. Each mate is licensed and could in an emergency take over the control of the ship even though as a matter of orderly management the first mate seems to have somewhat informal supervisory control over the others, but there was a similar supervision of general foremen over the others in the Packard case. In its opinion in that case, the Supreme Court stated that the Board has broad discretion to determine appropriate units and that if there is substantial evidence to support the Board's determination, that determination will rarely be disturbed.

In Jones & Laughlin Corporation v. N.L.R.B., 5 Cir., 146 F.2d 833, certiorari denied, 325 U.S. 886, 65 S.Ct. 1575, 89 L.Ed. 2000, the court held that a bargaining unit composed of masters of ships along with other licensed deck officers and pilots, was appropriately chosen. In our case the first mates seem to have exercised some authority over the others; but the Jones & Laughlin case goes even further, since in that case masters themselves were included in the unit along with the mates and certain others. [1]

On the authority of these cases, an enforcement order will issue.

---

[1] See N. L. R. B. v. E. C. Aitkins & Co., 67 S.Ct. 1265, and N. L. R. B. v. Jones & Laughlin Steel Corp., 67 S.Ct. 1274.