**INTERNATIONAL ORGANIZATION OF MASTERS, MATES AND PILOTS OF AMERICA, INC., et al., Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 15537.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 3, 1960.

Decided June 21, 1965.

Miss Betty H. Olchin, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, Cristobal, Canal Zone, with whom Messrs. Mozart G. Ratner and Isaac N. Groner, Washington, D. C., were on the brief for petitioners.

Miss Margaret M. Farmer, Atty., N. L. R. B., with whom Messrs. Stuart Rothman, Gen. Counsel, N. L. R. B., at the time the brief was filed, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frederick U. Reel, Atty., N. L. R. B., at the time the brief was filed, were on the brief for respondent.

Messrs. Arnold Ordman, Gen. Counsel, and Melvin Pollack, Atty., N. L. R. B., were on the pleadings subsequent to remand.

Before WASHINGTON, DANAHER and BURGER, Circuit Judges.

### PER CURIAM:

This case was first argued in this court November 3, 1960 when the petitioners, the International Organization of Masters, Mates & Pilots (hereinafter MMP), International Vice President Johnson, and MMP Local 47, asked us to review and set aside the Board's cease and desist order which had outlawed a secondary boycott. Petitioners had been engaged in a dispute with the Shipping Federation of Canada over alleged discrimination in the hiring of American pilots on foreign-owned vessels operating on the Great Lakes. The Board had determined that MMP and its Local 47 as agent of MMP had picketed Federation vessels as they engaged in loading or unloading in American ports. The Board asked us to enforce its order.

Deeming the record before us inadequate, we entered our order of December 20, 1960 [1] remanding the case to the Board with the request that specific findings be made in certain respects. As of November 6, 1963, the Board renewed its prayer for enforcement based upon a Supplemental Decision.[2] Once again, we insisted that the Board deal specifically

---

1. See 24 LRRM 2624 (1960), notice of which was taken by the Supreme Court in Marine Engineers Beneficial Ass'n v. Interlake S.S. Co., 370 U.S. 173, 178–185, 82 S.Ct. 1237, 8 L.Ed.2d 418 (1962).

2. See 144 N.L.R.B. 1172 (1963).

with particulars we deemed essential. Under date of January 31, 1964, we entered an order requiring the Board to do so. (*Infra*, page 776.)

Thereafter as of February 28, 1964, the Board transmitted its Second Supplemental Decision[3] with respect to which we invited and the parties submitted detailed memoranda. Now, in light of the record as thus completed and after consideration of the contentions of the respective parties, we agree with the conclusion of the Trial Examiner, as adopted by the Board, that MMP is a "labor organization" within the meaning of sections 2(5) and 8(b) of the Act, as amended. Moreover we are satisfied that the Board could correctly find, as the General Counsel had charged, that Local 47, International Vice President Johnson and MMP, all petitioners herein, were intimately and jointly involved in the illegal secondary boycott. We are not persuaded that we should disturb the Board's conclusion that Local 47 was an agent of MMP. Accordingly, the petition for enforcement will be granted, and the petition to review and set aside the Board's order must be denied.

The background for our determination had its origin in the General Counsel's complaint[4] against the petitioners that picketing activities on or near the docks in Chicago, Milwaukee and Cleveland were in violation of section 8(b) (4) (A) of the Act, as amended, 61 STAT. 141, 29 U.S.C. § 158(b) (4) (A) (1958), one of the "secondary boycott" provisions.[5]

The Trial Examiner, in his Intermediate Report,[6] determined that peti-

tioners' activities in *Cleveland* violated section 8(b) (4) (A) but that in all other respects the complaint should be dismissed. In addition, the Examiner found that MMP was a "labor organization" within the meaning of sections 2 (5) and 8(b) of the Act, that the Board had no jurisdiction to decide whether petitioner Local 47[7] was a "labor organization" because the individual complaint filed in connection with the activities in Cleveland did not name it as a respondent, but that both Local 47 and petitioner Johnson were liable as "agents" within the meaning of sections 2(13) and 8(b) of the Act. The Board subsequently adopted the findings, conclusions, and recommendations of the Trial Examiner. It ordered the petitioners (1) to cease and desist from continuing the illegal boycott and (2) to take certain affirmative actions to effectuate the policies of the Act.

In their petition to review, the petitioners did not contest the finding that their activities in Cleveland would constitute unfair labor practices if engaged in by a "labor organization." Petitioners contended only that the Board had erroneously concluded that MMP was a "labor organization." The Trial Examiner had recognized that "the unfair labor practices proscribed in section 8 (b) (4) (A) of the Act may be committed only by a 'labor organization or its agents' * * *."[8] He pointed out that the Act, in defining the term "labor organization," laid down two tests as determinative.[9] Petitioners had acknowledged that MMP existed for the purpose,

---

3. 146 N.L.R.B. 116 (1964).

4. The complaint dated May 23, 1958, had been lodged pursuant to charges brought by several stevedoring and warehouse companies.

5. These provisions were redrafted without relevant change in the Labor-Management Reporting and Disclosure Act of 1959, 73 STAT. 542, 29 U.S.C. § 158(b) (4) (i) and (ii) (Supp. V, 1964).

6. 125 N.L.R.B. 113 (1959).

7. Local 47 covered the category of masters, mates, or pilots, whom petitioners alleged

to be "supervisors" and thus not "employees" within the meaning of the statute.

8. 125 N.L.R.B. at 131.

9. Section 2(5) of the Act defines "labor organization" as

"any organization of any kind * * * in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

in part, "of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." In addition the Examiner concluded, MMP was also an organization in which "employees" participated because: (1) petitioners had agreed that the members of MMP Local 3 (Associated Maritime Workers) were "employees" within the meaning of the Act; (2) the Board had found MMP to be a labor organization in Standard Oil Co., 121 N.L.R.B. 208 (1958), enforced *sub nom* Nat'l Marine Engineers Beneficial Ass'n v. NLRB, 274 F.2d 167 (2 Cir. 1960); (3) MMP had conceded in prior cases that it was a "labor organization"[10]; and (4) the requirement that "employees" participate did not mean that the workers involved in the particular dispute before the Board had to be "employees" but, instead, meant that a union was a "labor organization" if the members of any local fitted the category of "employees." Because of this conclusion, the Examiner found it unnecessary to determine whether the pilots themselves were "employees" within the meaning of section 2(5).

The petitioners, on brief, contended here that the Examiner, and thus the Board, erred in deciding that MMP was a "labor organization." They argued principally that MMP could not be held responsible for an unfair labor practice as a "labor organization" unless the pilots for whose benefit the secondary boycott had been effected were themselves "employees." Again, it would be particularly unfair in this case to focus attention on the status of members of Local 3 because that local represented such a small percentage of the total MMP membership and was affiliated with MMP in only a limited capacity.

In sum, petitioners would have it that MMP was a "labor organization" insofar as the activities of Local 3 were involved but not such an organization when operating on behalf of its other locals. Both the Board and the courts, moreover, had refused to extend to MMP the benefits of the Act when it was representing the interests of non-employee members. See Wilson Transit Co., 80 N.L.R.B. 1476 (1948); Wyandotte Transportation Co., 67 N.L.R.B. 930 (1946), enforcement granted, 162 F.2d 101 (6 Cir. 1947), only later to be denied on rehearing, 166 F.2d 434 (6 Cir. 1948), after the Taft-Hartley amendments had become effective. Finally, the "admissions" by MMP that it was a "labor organization" in such cases as J. W. Banta Towing Co., Inc., supra note 10, were not in fact admissions and, if they were, could not be relied on by the Board in the present context. See Nat'l Marine Engineers Beneficial Ass'n, etc. v. NLRB, 274 F.2d 167, 172 (2 Cir. 1960).

After oral argument, we reached the conclusion that neither the petitioners nor the Board had been quite correct in their respective analyses of the issue as to whether MMP was a "labor organization." It was clear enough that only a "labor organization or its agents" could be held liable for a violation of the secondary boycott provisions. Section 2(5) of the Act is also specific in requiring that a "labor organization" must be one in which "employees" participate. Although the term "employees" is broad, section 2(3) excludes certain classes of workers from this category, and the petitioners contended accordingly that pilots fell within the category of "independent contractors" or "supervisors."[11] Since the wrongful acts found by the Board to have been committed on the Cleveland docks were committed only by non-"em-

---

10. See, e. g., J. W. Banta Towing Co., Inc., 116 N.L.R.B. 1787 (1956), enforcement denied *sub nom* NLRB v. Nat'l Org. Masters, Mates & Pilots, 253 F.2d 66 (7 Cir. 1958).

11. The petitioners also argued that pilots were excluded because not employed by "employers," as required by section 2(3). The basis of this argument was that "employers" should not be construed to mean "foreign employers." For reasons which will be made clear later, we do not reach any of these contentions.

ployees," MMP could not be a "labor organization" for the purpose of this case. We rejected this argument.

In Di Giorgio Fruit Corp. v. NLRB, 89 U.S.App.D.C. 155, 191 F.2d 642, 28 A.L.R.2d 377, cert. denied, 342 U.S. 869, 72 S.Ct. 110, 96 L.Ed. 653 (1951), we held that the word "employees," as used in section 2(5) to define "labor organization," was not itself to be defined in its generic sense. It was to be given only the meaning attributed to it by section 2(3) when the question before the court was whether a given organization was subject to the restrictions of the secondary boycott provision. In that case we decided that a union local composed *entirely* of agricultural workers was not a "labor organization" because this class of workers was specifically excluded from the definition of "employees." But that case was not controlling here. After all, the conclusion that a local which contained no "employees" was not a "labor organization" did not apply to an International which admittedly had some "employee" members. In *Di Giorgio* the statute by its own terms did not apply; here, assuming alternatives were open, we were necessarily forced to select the more appropriate construction in light of the purposes of the Act.

In that approach, we were persuaded by the reasoning of the Second Circuit in Nat'l Marine Engineers Beneficial Ass'n v. NLRB, *supra* page 774, a case almost identical to our own and involving the same union. There the court held that the Board did not err in finding that MMP was a "labor organization" and, thus, could be guilty of unfair labor practices under sections 8(b) (4) (A) and (B). We agreed with Judge Friendly that the Board was warranted in looking to [12] the entire membership of the union charged with a violation of the secondary boycott provision in determining whether or not that union was a "labor organ-

ization." Nothing in the Act or its legislative history precluded such an interpretative approach. A local composed entirely of supervisors could not be a "labor organization," as we have seen. But it is not inconsistent to hold the parent responsible as a "labor organization" if it be an organization in which "employees" otherwise have participated, despite the fact that the parent may have engaged in the illegal activities solely for the benefit of its non-"employee" local.

It may well be, on the other hand, that a collective bargaining agreement entered into by MMP on behalf of Local 47 would not be within section 301 of the Taft-Hartley Act, 61 STAT. 156, 29 U.S.C. § 185 (1958), since that section deals only with "contracts between an employer and a labor organization *representing employees * * *.*" (Emphasis added.) Such a construction of this language would seem to be eminently correct in the context of section 301. While there is language in A. H. Bull Steamship Co. v. National Marine Eng. Ben. Ass'n, 250 F.2d 332, 336 (2 Cir. 1957), approving this reading of section 301, the Second Circuit has since pointed out, United States v. National Marine Eng. Ben. Ass'n, 294 F.2d 385, 390 (2 Cir. 1961), that its earlier case did not decide this issue, the outcome there really having turned on the application of section 4 of the Norris-LaGuardia Act. In any event, the construction of section 301 has no necessary bearing on the present question whether MMP may be liable as a "labor organization." Neither the language nor the legislative history of section 8(b) (4) (A) warrants reading in a requirement that a "labor organization" must act on behalf of "employee" members in order to violate the ban on secondary boycotts. There was thus no basis on which MMP might build an implied exception for itself if in fact it were a "labor organization."

12. Prior decisions had already pointed in this direction. See, e. g., NLRB v. American Furnace Co., 158 F.2d 376 (7 Cir. 1946); NLRB v. Edward G. Budd

Mfg. Co., 169 F.2d 571 (6 Cir. 1948), cert denied, Foreman's Ass'n v. Edward G. Budd Mfg. Co., 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441 (1949).

So reasoning, we thought *Bull Steamship, supra,* of little relevance to the instant situation. But we could not accept the Board's position that any union was a "labor organization" [13] as long as one of its members fell within the category of "employees."[14] Although we agreed with the Board that the members of Local 47 did not *have* to be "employees" in order to hold MMP as a "labor organization" *for the purposes of this case,* we were of the view that the Act required the substantial and meaningful participation of "employees" in order to constitute an organization a "labor organization" within the meaning of section 2(5).

Since the Board had deemed it unnecessary to make findings of this nature, we adopted the suggestion made by counsel for the Board and remanded the case. So it was that in our order of December 20, 1960,[15] we directed the Board to review the entire case in light of the order and to make specific findings with respect to (1) whether the members of Local 47 included in substantial number or proportion persons who were "employees" and whether such "employees," if any, participated in the Local and in MMP in a substantial and meaningful manner; and (2) whether the members of MMP included "employees" in such a relationship.

The Board responded to our order in a Supplemental Decision of October 23, 1963 based on facts stipulated by the parties.[16] Thus the record was caused to show and the Board accordingly found that there were approximately 170 "employees" in MMP, all members of Associated Maritime Workers' locals (1½% of the total MMP membership); the relationship of these locals to the parent union could be determined by the provisions of the MMP constitution; except for 12 workers who were pilots, Local 47 contained no "employees"; and finally, it had been stipulated that the Board should decide the status of these 12 pilots. The Board found that the number of "employees" in the Associated Maritime Workers' locals was not insubstantial in relation to the total membership of MMP and that the participation of these locals in MMP did not lack substance or meaning. It found it unnecessary to determine the status of the pilots because they numbered only one-tenth of one per cent of the total MMP membership and were, therefore, insubstantial. The Board concluded by urging on us, once again, approval of the broad rule it had adopted in its 1959 decision.

When filing the Supplemental Decision with the court, the Board on November 6, 1963, renewed its petition for enforcement. The petitioners thereupon contended in their answer that the Board had not complied with our order in that it had failed to determine whether the pilots were "employees," whether they represented a substantial proportion of Local 47, and whether they participated in the affairs of Local 47 in a substantial and meaningful manner. We agreed with the petitioners and again remanded by order of January 31, 1964 directing the Board to make additional findings in the required respects and

---

13. We were, therefore, unable to dispose of the instant case in the manner open to Judge Friendly, who held that the Board's decision on the "labor organization" issue there met the standards laid down in Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), despite the Board's mistaken reliance on certain evidentiary factors. In 274 F.2d at 175, indeed, he urged:
    "We earnestly suggest to the Board that the issue whether these two unions, whose activities concern almost every ocean and inland port of the United States, are 'labor organizations' with-

in the meaning of the National Labor Relations Act deserves more thorough treatment than it has had here."

14. Even so, we confronted a real problem in appraising the weight to be given to the small percentage of MMP's members who admittedly were "employees" and to the fact that these "employees" were termed "Associated Maritime Workers" and connected with the International in only a limited capacity.

15. Our order is set out at 24 LRRM 2624 (1960), and see note 1, *supra*.

16. 144 N.L.R.B. 1172 (1963).

to do so within thirty days. In a Second Supplemental Decision entered on February 26, 1964,[17] the Board, with two members dissenting, found that the pilots who were members of Local 47 at the times relevant to this proceeding were either "independent contractors" or "supervisors," and were not "employees" within the meaning of the Act. The Board also found that if the pilots were "employees," they comprised a substantial proportion of Local 47's membership and participated in its affairs in a substantial and meaningful manner.

Thus, finally we were in position to turn to the issues presented by the Board's two Supplemental Decisions. First, we will now affirm the finding of the Board on the first remand that MMP is a "labor organization." Even as we do so, we observe that this characterization of MMP as a "labor organization" means simply that that entity, as presently constituted, is such an organization for all purposes under the Act. In other words, the use of the term "labor organization" in any section of the Act must apply to MMP unless some further language of the section or its legislative history indicates a contrary result.

There is ample evidence on the record to support its conclusion that the number or proportion of "employees" participating in MMP at the time of the activities in question was not insubstantial and that they participated in the parent union in a substantial and meaningful manner.

Next, we must uphold the finding by the Board that the pilot-members of Local 47 are not "employees." Neither party contests this finding, and it too finds support in the record and in other court cases. See, e. g., Local 28, Internat'l Organization of Masters, Mates & Pilots v. N. L. R. B., 116 U.S. App.D.C. 110, 321 F.2d 376 (1963).

Finally, we turn to an issue (not raised by the petitioners until after the first Supplemental Decision) as to whether Local 47, with no "employee" members, may be held liable for a violation of section 8(b) (4) (A) as an "agent" of MMP. We answer affirmatively, as did the Board. It would be anomalous indeed to hold that MMP may be liable for the secondary boycott but that its picketing Local 47 though acting as its "agent," may not be. See Nat'l Marine Engineers Beneficial Ass'n v. NLRB, *supra* page 774, 274 F.2d at 170–171. This conclusion in no way derogates from the position expressed in the *Di Giorgio Fruit Corp.* case, *supra*. We realized there that an expanded definition of the word "agent" could result in a virtual negation of the rule that a union with no "employees" was not subject to the secondary boycott provision. By the same token there may be many situations where an alleged joint venture or agency status is more apparent than real. Between such extremes it well may be that in cases which seem to fall within the instantly presented category, the Board should devise and apply a stricter doctrine of agency. Certainly to be avoided would be a rule which might seem without more, to bring all locals of this nature within the prohibitions of the Act involved here.

Our record now presents no problem on any such score, for we are bound to note that here the petitioners have not contested the Board's finding that, as a matter of fact, Local 47 and MMP were intimately and jointly involved in the illegal secondary boycott.[18] That finding is in strict accordance with the teaching of the Court as to what constitutes an "agency":

"[W]hen any number of persons associate themselves together in the prosecution of a common plan or enterprise, lawful or unlawful, from

17. 146 N.L.R.B. 116 (1964).

18. See 125 N.L.R.B. at 128–131. That the Supreme Court deems the Board to possess primary jurisdiction in resolving

problems like this, see Marine Engineers Beneficial Ass'n v. Interlake S.S. Co., *supra* note 1, 370 U.S. at 180–182, 82 S.Ct. 1237.

the very act of association there arises a kind of partnership, each member being constituted the agent of all, so that the act or declaration of one, in furtherance of the common object, is the act of all, and is admissible as primary and original evidence against them." Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 249, 38 S.Ct. 65, 72, 62 L.Ed. 260 (1917).

Absent a challenge to the Board's finding on this final point, we are not now disposed to disturb the Board's conclusion that Local 47 was an "agent" within the meaning of section 8(b).

Petition for enforcement granted; petition for review denied.

WASHINGTON, Circuit Judge (concurring in the result):

The Board found that petitioners had violated one of the secondary boycott provisions of Section 8(b) (4) (A) of the Act, as amended, 29 U.S.C. § 158(b) (4) (A) (1958), and sought enforcement of its cease and desist order in this court. Petitioners have sought review in order to have the Board's order set aside. Petitioners do not contest that the activities in question would violate the Act if done by a labor organization. The principal issue involved is whether MMP should be regarded as a labor organization within the meaning of Section 8(b) (4) (A)'s proscription of secondary boycott activities, when the activities involved are for the benefit of non-employees. In the light of the Board's finding, supported by the evidence, that there is substantial participation by employees in the union, I think that the Board was justified in treating MMP as a labor organization in this context. The Board's conclusion that Local 47, with only non-employee members, violated Section 8(b) (4) (A) as an agent of MMP is also supported in the record. See, generally, National Marine Engineers Beneficial Ass'n v. National Labor Relations Board, 274 F.2d 167 (2d Cir. 1960).