INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, et al., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 19084.

United States Court of Appeals District of Columbia Circuit.

Argued June 9, 1965.

Decided July 16, 1965.

Petition for Rehearing En Banc Denied Oct. 7, 1965.

Mr. Richard H. Frank, Tampa, Fla., for petitioners.

Mr. Warren M. Davison, Atty., N. L. R. B., with whom Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Marcel Mallet-Prevost, Asst. Gen. Counsel, were on the brief, for respondent.

Before BAZELON, Chief Judge, and BURGER and TAMM, Circuit Judges.

792

PER CURIAM.

The only significant question presented is whether under our recent decision in International Organization of Masters, Mates and Pilots of America, Inc., et al. v. N.L.R.B., 122 U.S.App.D.C. ——, 351 F.2d 771, June 21, 1965, two of the petitioners can be held liable as "agents" of "labor organizations" for actions which would violate the express provisions of Section 8(b) (4) (i) (ii) (B) of the National Labor Relations Act if committed by "a labor organization or its agents."

 Petitioners Maintenance of Way Employees and System Division No. 87, The Order of Railway Telegraphers, represent only individuals employed by employers subject to the Railway Labor Act. Such individuals are excluded from the definition of "employees" within the National Labor Relations Act. It follows that these petitioners are not themselves "labor organizations" within that statute. Under *Masters, Mates and Pilots, supra,* petitioners may nevertheless be held liable if the record discloses that petitioners acted as agents for or joint venturers with unions which do qualify as "labor organizations" within the National Labor Relations Act. We think the Board was justified in finding that the petitioners were engaged in a joint venture with statutory labor organizations, and that the secondary activity was within Section 8(b) (4) though directed ultimately at a Railway Labor Act employer.

 That Petitioners Telegraphers and Maintenance of Way Employees did not violate the Railway Labor Act (which does not prohibit secondary boycotts) by their actions cannot remove them from the reach of the National Labor Relations Act. Congress' failure to deal with such activity in the Railway Labor Act at its inception or by amendment in no way detracts from the broad scope of the secondary boycott provisions of the National Labor Relations Act. Petitioners subjected themselves to those provisions when they undertook to involve themselves in a common undertaking with statutory "labor organizations" in conduct violating Section 8(b) (4) of the National Labor Relations Act.

The Board's order will be enforced.

BAZELON, Chief Judge (dissenting).

Eleven unions struck the Florida East Coast Railway and engaged in secondary picketing. The members of the relevant local units of these unions were all employees of the Railway. Hence, these units were not subject to regulation as "labor organizations" under the National Labor Relations Act. Seven of the eleven national unions with which these locals were affiliated, similarly, were composed entirely of railroad employees. The strike against the Florida East Coast was controlled by a council of the eleven unions, on which national and local representatives apparently participated. The actions of that council were entirely for the benefit of railroad employees in their dispute with a railroad employer. Through the fortuity that four of the participating "nationals" *are* "labor organizations" under the Act, the Board, in effect, claims the right to regulate the council's conduct of the strike.

No finding or basis for finding that the four "labor organizations" control the council appears. Absent such control, any relationship they have to the other members of the council would seem far more attenuated than was the case in *Masters, Mates & Pilots,* which involved the relationship between a local union and its parent international. More important, however, that decision does not threaten interference with a congressional allocation of regulatory responsibility. If the unions there were not subject to the National Labor Relations Board, they were subject to no regulation at all. Here, the activities of the council and its members were subject to comprehensive regulation by the Railway Labor Board, under the Railway Labor Act. For all that appears in this case, the council was formed in response to the requirements and procedures of that regulatory scheme. Congress' failure to forbid secondary boycotts under the Railway Act implies its acquiescence

in such behavior by railroad employees. Alcoa Steamship Co. v. Federal Maritime Comm'n, 120 U.S.App.D.C. ——, 348 F.2d 756, decided April 15, 1965. Before we agree that a "joint venture" has been shown, I think we must at least require the Board to determine whether the unions have been forced together by the Railway Act. Otherwise we risk interfering with the congressional scheme.

I would deny enforcement of so much of the Board's order as purports to bind agents of the four "labor organizations" and remand to the Board for further consideration of the agency issue.