Simon J. Liebowitz, J.
Plaintiff, a labor union of licensed maritime engineers with a division of ship officers, moves for a preliminary restraining order enjoining defendant International Longshoremen’s Association (ILA), a labor union of stevedores and longshoremen, and defendant International Organization of Masters, Mates and Pilots (MM&P), a union of deck officers, from picketing the vessel M. V. Floridian in Miami, Florida, San Juan, Puerto Rico, and any other locations.
Plaintiff further seeks to enjoin defendants from interfering with the collective bargaining agreement betweeh plaintiff and Marine and Marketing International Corporation (MMIC), a new corporate operator of the vessel.
Plaintiff, in its complaint and moving papers, alleges that pursuant to its collective bargaining agreement with MMIC, it furnished the deck officers for the M. V. Floridian. The ports of call or route were limited to Miami, Florida and San Juan, Puerto Rico. When the vessel was to be loaded at the Miami port its former deck officers, members of defendant MM&P, who had been employed by a prior corporate operator, picketed the ship. The longshoremen members of defendant ILA honored the picket line and refused to load the vessel. MMIC then obtained a temporary injunction in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida *330 against defendant MM&P restraining it from picketing. The pickets obeyed the injunction order and the ship was loaded. On its arrival at San Juan, Puerto Rico, the pickets reappeared and the longshoremen, members of one of the locals of defendant ILA, refused to unload the ship.
Subsequent to the institution of this action and the return date of this motion, ‘ ‘ a temporary restraining order was issued by a Provincial Court of Puerto Rico, restraining and enjoining the picketing by MM&P.” After the service of the order ‘ ‘ upon the MM&P pickets, the picket line came down. However, despite the fact that there was no picket line in existence, the members of the International Longshoremen’s Association were ordered and directed not to unload the M./V. Floridian ” and they are not doing so.
The crux of plaintiff’s action in this court is that defendant MM&P, a competing* union of deck officers, and defendant ILA with full knowledge of plaintiff’s collective bargaining agree- • ment conspired to illegally induce and persuade the MMIC to violate and repudiate its agreement with plaintiff and to recog*nize ‘ ‘ defendants and their members as the exclusive bargaining agent for the masters and licensed deck officers.”
The tying up of the M. V. Floridian with its full cargo in San Juan allegedly represents defendants’ unlawful means to force MMIC to do their bidding* or completely cease business and to serve notice on all ship operators that they will face a similar fate should they contract with plaintiff as the exclusive bargaining agent for deck officers.
Plaintiff thus seeks an injunction and damages against defendants claiming* that plaintiff’s existence as a trade union is threatened by defendants’ continuing* action and conspiracy. Plaintiff relies upon the alleged illegality of defendants’ conspiratorial conduct to violate plaintiff’s collective bargaining agreement as the basis for this court’s jurisdiction over the subject of this action and as the basis of removing this action from the pale of the National Labor Relations Act (Act) (U. S. Code, tit. 29, § 151 et seq.). Buttressing this contention plaintiff sets forth that a charge of unfair labor practice was filed by MMIC with the National Labor Relations Board (Board) and that the same was dismissed by the regional director upon the ground that the employees of defendant MM&P involved in the picketing* are supervisors and as such are ‘ ‘ not employees within the meaning of the Act.” Plaintiff apparently makes no claim that the picketing was accompanied by any violence or other unlawful acts as would come within the inherent jurisdiction of a State court to halt and prevent.
*331 Defendants have crossed-moved for judgment dismissing the complaint on several grounds. However, before this court may consider the sufficiency of plaintiff’s papers to merit the relief sought, determination must first be made as to whether the dispute herein is pre-empted by the Act and whether it comes within the exclusive jurisdiction of the Board.
The doctrine of pre-emption may be stated as the deprivation of the power of a State court to entertain any action or proceeding involving a labor dispute that is unaccompanied by violence or to consider whether a specific labor question is outside the jurisdiction of the Board. The doctrine, like a mathematical formula, may be simple of statement but under given circumstances proves difficult of application. Pre-emption is a judicially created doctrine to enforce the presumed intent of 'Congress in all of the shadow areas not illumined by the language of the Act. The Federal courts have wrestled with this doctrine and ‘ ‘ It was * <s experience— not pure logic — which initially taught that each of these methods sacrificed important federal interests in a uniform law of labor relations centrally administered by an expert agency without yielding anything in return by way of predictability or ease of judicial application ” (Motor Coach Employees v. Lockridge, 403 U. S. 274, 291). It was the ‘ ‘ watershed ’ ’ case of San Diego Unions v. Garmon (359 U. S. 236) (referred to as the Garmon case) that cleared the confusion over prior decisions by the Federal courts.
The determinative rule as laid down in the Garmon case and as later approved and expanded upon in Motor Coach Employees v. Lockridge (supra) is “ When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted. ’ ’ (Garmon, p. 245.) Under the umbrella of said rule is conduct that may be protected or prohibited by the Act.
The problem here presented is whether the conduct of defendants is 1 ‘ arguably ’ ’ prohibited by the Act and thus solely within the competence of the Board to consider and determine.
Plaintiff and defendant M.M&P have had a checkered career in our State and Federal courts. In Bull S. S. Co. v. National Marine Engrs. Beneficial Assn. [this plaintiff and defendant MMSP] (250 F. 2d 332, cert. den. 355 U. S. 932), the court reversed an injunction against them for picketing in violation of their collective bargaining agreement and sustained their contention that they were not labor unions as defined under the Act (unions of supervisory employees are specifically *332 excluded from the definition of “labor organizations,” U. S. Code, tit. 29, § 152), and that they were therefore covered by the old Norris-La Guardia Act which deprived Federal courts of jurisdiction to enjoin peaceful strikes. That case, however, involved a direct strike by supervisors and their unions against the employer.
In ,a later action by [this plaintiff and defendant MMSP jointly] National Marine Engrs. Beneficial Assn. v. N. L. R. B. (274 F. 2d 167) they sought to review an order issued by the Board against them to cease and desist from inducing employees of another company from dealing with or doing work for an owner of two towboats, whom they sought to unionize and from whom they sought to obtain an exclusive collective bargaining agreement. Their contention was that as unions of supervisory employees they were not subject to the Act. The court, however, in distinguishing Bull (supra), stated that the holding there “ arose in a different context and under a different section, 29 U. S. C. A., § 185 (a)” and that it was “not willing to carry what was there said into the determination whether a union is a ‘ labor organization ’ under § 8 (b).” (p. 174).
The order of the Board was enforced by the court upon two principles, namely, (a) that they acted as principal for the employees of the ‘ ‘ labor organization ’ ’ who struck and compelled the owner of the towboats to capitulate and (b) that a union in which 1 ‘ employees ’ ’ participate, ‘ ‘ whether local or national ” and irrespective of whether “ the workers on whose behalf the union was acting are all supervisors,” is a “labor organization ’ ’ under the Act and may be held guilty of unfair labor practice (p. 173). See also Local 28, Int. Organization of Masters M & P v. N. L. R. B. (321 F. 2d 376), wherein defendant MM&P was held not subject to the Act as a principal because of its nature as an “ association ’ ’ of supervisors, but was held responsible as an agent taking part in a secondary boycott.
Subdivision (5) of section 152 of title 29 of the United States Code, defines “labor organization” as any organization “in which employees participate.” Subdivision (3) of the section defines an ‘1 employee ’ ’ as any worker except 1 ‘ agricultural laborer * * * supervisor.” Supervisors, not being employees by statutory exclusion, a union or association of supervisors is therefore not a ‘1 labor organization. ’ ’
Expanding the application of the Act to plaintiff, the court in Marine Engrs. Beneficial Assn. [this plaintiff] v. Interlake Co. (370 U. S. 173, 177, 184) sustained plaintiff’s contention that “ the issue to be determined * * * is not whether the state courts correctly decided their ‘ labor organization ’ status, but *333 whether the state courts were free to finally decide that issue at all.” The court then went further to hold that where the Board had determined that plaintiff was a “labor organization ” within the purview of the Act and guilty of unfair labor practices under section 158 (subd. [b], par. [4], subpar. [B] of title 29 of the United States Code), it became “ the duty of the state court to defer to the Board’s determination.”
In International Organization of Masters, M. & P. (this defendant) v. N. L. R. B. (351 F. 2d 771, 774, 775, 777), the court made a positive finding that defendant MM&P was a “labor organization ” under the Act guilty of a secondary boycott even though it was acting on behalf of a local not .so recognized and not subject to the Act. The determinative factor was the international character of defendant’s organization in which it had members who were not supervisors. Having “ employees ” in its union, it was a “labor organization” responsible as any other labor union involved in a secondary boycott. Defendant’s contention that it “was a ‘labor organization ’ insofar as the activities of Local 3 were involved but not such an organization when operating on behalf of its other locals ” was rejected by the court as “it is not inconsistent to hold the parent responsible as a ‘ labor organization ’ if it be an organization in which ‘ employees ’ otherwise have participated, despite the fact that the parent may have engaged in the illegal activities solely for the benefit of its non-‘ employee ’ local * * * It would be anomalous indeed to hold that MMP may be liable for the secondary boycott but that its picketing Local 47 though acting as its ‘ agent ’, may not be. ’ ’
Plaintiff relies heavily upon Hanna Min. v. Marine Engrs. (this plaintiff) (382 U. S. 181, 187), wherein the court reversed the State court’s dismissal of an action that sought to enjoin this plaintiff from engaging in picketing that appears to be similar to that now conducted by defendant MM&P. The dismissal by the State court was on the ground ‘ ‘ that the picketing could be deemed illegal under Wisconsin law * * * arguably violated §§ 8(b)(4)(B) and 8(b)(7) [secondary boycotts] of the federal labor Act and so fell within the Board’s exclusive jurisdiction ’ ’.
The holding in the Hanna case, if not critically analyzed, would seem to overrule all of the previously cited authorities that plaintiff" and defendant MM&P are ‘ ‘ labor organizations ’ ’ subject to the Act when their picketing falls within the area prohibited by section 158 of title 29 of the United States Code. The decisive factor in holding this plaintiff not subject to the Act was that the Board had already determined that this plain *334 tiff was a union of supervisors and not a “ labor organization ” and that its picketing “ at Duluth and at other sites investigated did not exceed the bounds of lawful picketing under the Board’s standards.” (p. 186).
The court’s statement at page 194, “In concluding that the Act does not preempt the State’s authority to quench picketing said to have occurred in this case, we do not retreat from Garmon. Bather, we consider that neither the terms nor the policies of that decision justify its extension to the present facts ’ ’ is made evident by the prior statement at page 193: “Most importantly, the Board’s decision on the supervisory question determines, as we have already shown, that none of the conduct is arguably protected nor does it fall in some middle range impliedly withdrawn from state control. Consequently, there is wholly absent the greatest threat against which the Garmon doctrine guards, a State’s prohibition of activity that the Act indicates must remain unhampered.” The significant factor not to be lost is that the Board had determined that there was no illegal secondary picketing by this plaintiff and that as to this picketing action, plaintiff was an association of supervisors not subject to the Act.
In the instant case MMIC, the ship operator, filed with the Board a charge of unfair labor practice against defendant MM&P’ under section 8 (subd. [b], par. [4], subpar. [D] of the Act) (U. S. Code, tit. 29, § 158, subd. [b], par. [4], subpar. [D]) which interdicts picketing for the purpose of “forcing * * * any employer to assign particular work to employees in a particular labor organization * * * rather than to employees in another labor organization ”,
The Board, after investigation, determined that “ it does not appear that further proceedings on the charges are warranted ’ ’ and declined “ to issue a notice of hearing ” or to issue a complaint. However, defendant MM&P now moves, as did plaintiff in its Interlake S. S. Co. action (Marine Engrs. v. Interlake Co., 370 U. S. 173), to dismiss the complaint on the basis of a charge pending and undetermined by the Board under section 158 (subd. [b], par. [4], subpar. [B]) of title 29 of the United States Code which proscribes secondary boycotts by means of ‘ ‘ forcing * * * any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees ”.
Adopting the rule as laid down in Garmon and the holding in the Interlake S. S. Co. case (supra) until the pending charge has been determined, the “Board should be free in the first *335 instance to consider the whole spectrum of possible approaches to the question * * * Only the Board can knowledgeably weigh the effect of either choice upon the certainty and predictability of labor management relations, or assess the importance of simple administrative convenience in this area” (Interlake, p. 181).
This court is barred from entertaining jurisdiction over an action that complains of conduct that may be arguably prohibited by the Act as the Board in the first instance must determine whether such conduct does or does not violate the Act.
Plaintiff’s basic allegations are that defendant MM&P acted in concert and conspired with defendant ILA to prevent MMIC from conducting its shipping business so long as it refuses to discharge its deck officers, members of plaintiff, and grant defendant MM&P an exclusive collective bargaining contract.
In Superior Derrick Corp. v. N. L. R. B. (273 F. 2d 891, cert. den. 364 U. S. 816), the union, in seeking to organize the employees of Superior, picketed with the intent of having the longshoremen of the stevedoring company, a local of ILA, refuse to work. The court, in determining that the picketing was illegal secondary picketing, held (p. 897): “But if there is an expectation or a hope or a desire that employees of the secondary employer will be induced or encouraged to take concerted action so that the secondary employer will cease doing business with the primary employer, then the Act bars that activity. ’ ’
In Grain Elevator, Flour and Feed Mill Workers v. N. L. R. B. (376 P. 2d 774, cert. den. 389 U. S. 932), the facts are almost identical to those charged by plaintiff against these defendants. The court in barring the secondary picketing held (p. 776): “The Board’s findings cannot be successfully undermined on the ground that the secondary employees had acted individually in deciding to avoid the struck ship. The substantial evidence of record supporting the Board’s findings includes the following: High officials of the International Longshoremen Association frequently declared it to be ILA policy to support SIU in its dispute with Upper Lakes. The president of Local 418 repeatedly told Continental that the Local was committed to assist SIU, that it considered there to be an 1 invisible picket line ’ around the Upper Lakes ships, and that grain would not be loaded onto those ships. ’ ’
The question as to whether defendants’ concerted action constitutes secondary picketing prohibited by the Act is not within this court’s jurisdiction. “ It is essential to the administration of the Act that these determinations be left in the first instance *336 to the National Labor Relations Board. What is outside the scope of this Court’s authority cannot remain within a State’s power and state jurisdiction too must yield to the exclusive primary competence of the Board.” (San Diego Unions v. Garmon, 359 U. S. 236, 244-245, supra).
The opinion and order of Judge Orem G-. Jtjdd of the United States District Court for the Eastern District of New York, remanding this case to this court, is not controlling as that decision was made on August 20, 1971, prior to the filing of a charge with the Board on August 26,1971, claiming unfair labor practice under section 158 (subd. [b], par. [4], subpar. [B]) of title 2d of the United States Code, which charge is still pending undetermined.
Accordingly, defendants’ motion to dismiss the complaint is granted.