UNITED STEELWORKERS OF AMERI-
CA, AFL–CIO–CLC, on behalf of Local
Union 14259, Plaintiff,

v.

INDIANA & MICHIGAN ELECTRIC
COMPANY, a corporation,
Defendant.

Civ. A. No. 76–0748–CH.

United States District Court,
S. D. West Virginia,
Charleston Division.

May 17, 1977.

Stanley M. Hostler, Charleston, W. Va.,
for plaintiff.

Guy R. Farmer, Washington, D.C., for
defendant.

## MEMORANDUM OPINION

DENNIS R. KNAPP, Chief Judge.

United Steelworkers of America [1] filed
this action seeking injunctive relief to en-
force an alleged collective bargaining
agreement entered into by Steelworkers on

---

1.   Hereinafter referred to as "Steelworkers."

behalf of Local Union 14259[2] and Indiana & Michigan Electric Company.[3] Jurisdiction of this Court is based upon the provisions of Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185.

In view of the findings of fact and conclusions of law hereinafter set out, the Court is of the opinion that appropriate relief should be granted.

## FINDINGS OF FACT

The Company operates a barge line on the Ohio River and its tributaries for the purpose of transporting coal for use at its various electric generating plants. Local 14259 has served as representative of a group of supervisory and non-supervisory personnel totaling 91 employees, 53 of which are master-pilots and pilots (supervisory) and 38 of which are classified as chief engineers or engineer-deckhands (non-supervisory). Local Union 14811[4] serves as the bargaining representative for other non-supervisory personnel, referred to collectively as deckhands. Neither local is certified by the National Labor Relations Board. Recognition of these locals and the entering into contracts with them is purely on a voluntary basis.

On September 1, 1973, the Company purchased the assets of O. F. Shearer & Sons, Inc. On that date, Shearer & Sons had an agreement with both local 14259 and local 14811 respecting wages and terms and conditions of employment. These agreements became effective on November 17, 1973, for a period of three years, expiring at midnight on November 17, 1976.

■ On October 20, 1976, the Company and both locals entered into voluntary negotiations to reach new agreements. On November 10, 1976, the Company submitted a written offer to local 14259, but that offer was rejected by a vote of its membership. On December 9, 1976, the Company made improved, written offers to both locals. On December 14, 1976, the members of local 14259 voted to accept its offer. On the same date, Captain Buck Snodgrass, a member of the local's negotiating committee, informed George Shamblin, manager of the Company's river transportation division, that the Company's December 9 written offer had been accepted as submitted. However, local 14811 rejected its improved offer on December 14. It is at this point that the overriding issue in this case comes into focus. On the one hand, the Company submits that the acceptance on the part of local 14259 was conditioned on local 14811 accepting its offer from the Company, which, of course, did not occur. Thus, the Company argues, when the condition did not occur, there was no acceptance and no contract came into being. On the other hand, the unions submit that the acceptance was unconditional and the contract was formed when the membership of local 14259 voted to accept the offer of December 9. There is evidence in this case supporting both contentions. However, the Court believes that the preponderance of the evidence sides with the unions' position and the Court so finds.

At any rate, predicated on its belief that since the event upon which acceptance of local 14259 was conditioned did not occur and that therefore no contract was entered into, the Company on December 23, 1976, withdrew its recognition of the master-pilots and pilots because they were supervisors. A new offer was made to the remaining non-supervisory personnel of local 14259, which has not been accepted. Thereafter all personnel for both locals returned to work. Local 14811 is still without a contract.

It is true, as the Company points out, that after the December 14 vote, the members of local 14259 did not return to work. It is contended by the Company that such action amounts to conclusive evidence of their non-performance, which in turn was conclusive evidence that no contract was formed. The record in this action, however, refutes this argument.

2. Hereinafter referred to as "local 14259."

3. Hereinafter referred to as "Company."

4. Hereinafter referred to as "local 14811."

**332**

Article IV of the agreement offered on December 9, 1976,[5] reads as follows:

## "ARTICLE IV

### No Strikes or Lockouts

During the life of the Agreement there shall be no lockouts on the part of the employer, nor suspension of work on the part of the employees. This agreement is a guarantee that there will be neither strikes nor lockouts and that all disputes shall be settled as herein provided. Refusal to board or handle any equipment made idle as a result of a legitimate strike shall not be deemed a violation, except the Master-Pilot, Pilot, Engineer, Operators, and Engineers-Deckhands shall stand security watch if necessary and requested."

It is undisputed that local 14811 was on a legitimate strike. Thus, the only duty owed the Company by the members of local 14259 under the December 9, 1976, offer was that the members of that local would stand security watches, which they did. Local 14259 members therefor did perform under the provisions of the new contract.

## DISCUSSION

Aside from contending that no contract was entered into by the Steelworkers on behalf of local 14259 and the Company, the Company also advances certain legal propositions which, if sustained, would require the Court to find in its favor.

■ First, the Company asserts that this Court lacks subject matter jurisdiction of this action in that Section 301 of the Act does not give a district court jurisdiction to entertain a suit to enforce a labor agreement on behalf of supervisory personnel.

Section 301 of the Act, 29 U.S.C. § 185(a), confers jurisdiction upon district courts over "[s]uits for violation of contracts between an employer and a labor organization representing *employees* in an industry affecting commerce . . . ." [Emphasis supplied]. The Company's position is that since supervisory personnel are not employees[6] under the Act, this action may not be maintained under Section 301.

The Ninth Circuit Court of Appeals was faced with this problem to which it responded in *Dente v. Masters, Mates and Pilots*, 492 F.2d 10, 12 (9th Cir. 1974) *cert. denied* 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974):

". . . This rather mechanical approach to the statutory interpretation has found some judicial adherents. See *Masters, Mates & Pilots Union v. NLRB*, 351 F.2d 771, [59 LRRM 2566] (D.C.Cir.1965); *Pharmacists, Local 330 v. Lake Hills Drug Co.*, 255 F.Supp. 910, [55 LRRM 2844] (W.D.Wash.1964) (dictum). We, however, agree with the Second Circuit that Congress, by eliminating supervisory employees from the bargaining and organizational protection of subchapter II, did not intend to deprive members of 'supervisory unions' of the rights secured by section 301. E. g., *National Marine Eng'rs Beneficial Ass'n v. Globe Seaways, Inc.*, 451 F.2d 1159, 1160 n.1, [79 LRRM 2067] (2d Cir. 1971); *United States v. National Marine Eng'rs Beneficial Ass'n*, 294 F.2d 385, [48 LRRM 2937] (2d Cir. 1961); *Isbrandtsen Co. v. District 2, Marine Eng'rs Beneficial Ass'n*, 256 F.Supp. 68, [62 LRRM 2488] (E.D.N.Y.1966); see *United States v. National Marine Eng'rs Beneficial Ass'n*, 292 F.2d 190, 192, [48 LRRM 2605] (2d Cir. 1961). We thus conclude that the complaint stated a claim within the District Court's jurisdiction."[7]

In addition, and as the Steelworkers point out in its brief, "the legislative history of

---

5. Article IV of the 1976 agreement was identical with the no-strike provision of the 1973 agreement.

6. There is little question that master-pilots and pilots are supervisory personnel and not employees.

7. See also, *National Eng'rs Beneficial Ass'n v. Globe Seaways, Inc.*, 451 F.2d 1159 (2nd Cir. 1971).

the Act evidences that the statutory policy toward supervisors as codified in §§ 2(3), 2(5), 2(11) and 14, applied to Title I of the [Act] and not to title III, § 301(a)." See, *United States v. NMEBA*, 294 F.2d 385 (2nd Cir. 1961).

■ Second, the Company takes the position that it exercised its right under the Act to withdraw recognition of the Union as the representative of the supervisory personnel. The Company correctly asserts that an employer, such as the Company, may voluntarily recognize a union for supervisors and voluntarily enter into a contract with that union; but the Company incorrectly maintains that it need not comply with such agreement unless it voluntarily undertakes to do so. From this fallacious premise the Company concludes that if it does not wish to honor such contract, *no* law—state or federal—can require it to do so.[8] This simply is not the case.

The Company would distinguish *Dente*, supra, on the basis that *Dente* involved an action against a union. Nevertheless, the *Dente* court provided a jurisdictional vehicle in the form of Section 301 to litigate the case against a union composed of supervisors. The rationale of the Company's argument that an action under Section 301 may be maintained against such a union but not on its behalf must fall.

■ Third, the Company urges that the West Virginia Statute of Frauds, W.Va. Code 55–1–1, bars this action. The pertinent part of the statute reads as follows:

"No action shall be brought . . . (f) [u]pon any agreement that is not to be performed within a year; [u]nless the . . . contract [or] agreement . . ., or some memorandum or note thereof, be in writing and signed by the party to be charged thereby or his agent. . . ."

Assuming that the above-quoted portion of W.Va.Code 55–1–1 applies at all in this case,[9] it has been satisfied by the acceptance by local 14259 of a written offer made by the Company, which is in this instance the party to be charged.[10]

■ Finally, the Company takes the position that this Court is without jurisdiction to grant any relief sought by the plaintiff by reason of the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. §§ 101–115. None of the acts which are not subject to restraining orders or injunctions are present in the case at bar.[11] Thus, as the Court stated in *Retail Clerks v. Lewis*, 327 F.2d 442, 446 (9th Cir. 1964):

"We do not think that an order directing an employer to comply with a collective bargaining contract, in a setting which none of the things described in the Norris-LaGuardia Act has occurred, even though it might technically be called an injunction, is the kind of injunction contemplated by that Act."[12]

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and the parties to this action by virtue of the provisions of Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185.

2. On December 14, 1976, by virtue of an affirmative vote by its members, local 14259 unconditionally accepted the Company's written offer of December 9, 1976, respecting wages and terms and conditions of employment.

3. By reason of the acceptance and approval of the members of local 14259 on December 14, 1976, a valid and enforceable

---

8. Defendant's post-hearing Brief, p. 9.

9. See, *Farmer v. United Brotherhood of Carpenters and Joiners*, 45 L.W. 4263. This case would indicate that a state's Statute of Frauds would not apply in a Section 301 case.

10. While a written offer is not necessarily the contract itself, it is, at the very least, a "memorandum or note thereof."

11. See, 29 U.S.C. § 104.

12. See also, *Textile Wkrs. Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

collective bargaining agreement was formed on said date to expire on November 17, 1979.

4. The action of the Company in withdrawing recognition of master-pilots and pilots on December 23, 1976, is null and void.

5. To the extent they were required to perform under the provisions of the agreement, the members of local 14259 did so perform.

6. The conduct on the part of the Company, as described herein, constituted a breach of the agreement.

7. Plaintiff is entitled to an appropriate order directing the Company to comply with the provisions of said Collective Bargaining Agreement.