ISBRANDTSEN CO., Inc., Petitioner,

v.

DISTRICT 2, MARINE ENGINEERS BENEFICIAL ASSOCIATION, AFL–CIO, Respondent.

No. 66–C–232.

United States District Court
E. D. New York.

June 27, 1966.

Krisel & Beck, New York City, for petitioner; Roman Beck, Maurice A. Krisel, New York City, of counsel.

Pressman & Scribner, New York City, for respondent.

ZAVATT, Chief Judge.

A collective-bargaining agreement between the petitioner, Isbrandtsen Co., Inc. (hereinafter the employer) and the respondent, District 2, Marine Engineers Beneficial Association, AFL-CIO (hereinafter the union), contains an arbitration clause. The agreement resulted from negotiations between the employer and the union, as representative of the employer's supervisory employees. A dispute arose between the employer and union when the employer sold certain of

its vessels to American Export Lines which was a party to a collective-bargaining agreement (as to *its* supervisory employees) with a different union. As Isbrandtsen sold its vessels, it discharged those of its supervisory employees who were employed aboard those vessels. The union questioned the right of the employer to discharge them, claiming that Isbrandtsen held a substantial stock interest in American Export Lines and should have insisted that one of the terms of the sale of its vessels require American Export Lines to employ these supervisory employees. The employer refused the demand of the union that this dispute be arbitrated under the arbitration clause of the contract between the union and Isbrandtsen. Whereupon, the union commenced an action in the Supreme Court, Kings County, to compel arbitration. That court made an order compelling arbitration of that dispute and thereafter confirmed the award of the arbitrator on November 21, 1962. Thereafter, the union and Isbrandtsen settled that dispute by a written agreement dated February 25, 1963. On March 7, 1966 (three years later) the union petitioned the same state court to compel arbitration of another dispute which it claimed arose out of the sale by Isbrandtsen of the same vessels. This time it claimed that the discharged supervisory employees were entitled to severance pay. On March 18, 1966, Isbrandtsen petitioned this court for removal of that petition from the Supreme Court, Kings County, to this court on the ground that, under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (hereinafter LMRA), this court has original jurisdiction; that the proceeding in the state court was removable under 28 U.S.C. § 1441(b).[1] After removal, Isbrandtsen filed its answer to that petition in which, among other defenses, it pleads res judicata. Whether or not the petitioner is barred from asserting now the present claim for severance pay is not before the court.

After the removal, the union moved to remand to the state court upon the grounds (1) that there is no diversity of citizenship; (2) that this court does not have jurisdiction under LMRA § 301, because the union is not a "labor organization representing employees in an industry affecting commerce" within the meaning of § 301 LMRA.

Section 301 LMRA, 29 U.S.C. § 185, provides in part, that:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."[2]

1. 28 U.S.C. § 1441(b)

"(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

2. § 301(b) of the Labor Management Relations Act provides:

"Any labor organization which represents employees in an industry affecting commerce as defined in this Act and any employer whose activities affect commerce as defined in this Act shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."

§ 301(c) provides:

"For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be

It is conceded that Isbrandtsen is an employer in an industry affecting commerce; that the members of the union are employed in an industry affecting commerce; that the membership of the union includes approximately 150 members who reside in New York State and that, since Isbrandtsen is a New York corporation, there is no diversity of citizenship, see United Steel Workers of America, AFL-CIO v. R. H. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed. 2d 217 (1965); that all members covered by the collective-bargaining agreement in dispute are supervisory personnel. The union contends that (1) LMRA § 301 jurisdiction does not lie in a contract dispute where the collective-bargaining unit is composed strictly of supervisory personnel and (2) even if this court has jurisdiction, it should exercise its discretion to remand the case to the state court where, it claims, federal law can and will be applied. The central issue is whether the union is a "labor organization representing employees in an industry affecting commerce * * *." It is clear that, in ordinary usage, it is a labor organization and as such represents employees. The union argues, however, that under the LMRA the terms "employee" and "labor organization" have statutory meanings which exclude it from the operation of LMRA § 301, because it is a union composed of supervisory personnel.[3]

The Labor Management Relations Act of 1947, 61 Stat. 136, was preceded by the National Labor Relations Act (NLRA), popularly referred to as the Wagner Act, 49 Stat. 449. When the LMRA of 1947 was enacted, it absorbed the seventeen sections (as amended) of the NLRA. They became Title I of the LMRA. Titles II, III, IV and V constitute the new matter in the LMRA of 1947. Title I contains a definition of "labor organization" and "employee." Title V provides that the meanings of these two terms are to be the same for LMRA purposes as they are for NLRA purposes.

For one to understand the relationship between the various titles of the Labor Management Relations Act of 1947 one must first break down the structure of that Act into its component parts. It is composed of five titles. Title I, an entity unto itself, is entitled "Amendment of National Labor Relations Act" and contains the entire revised version of that Act. It deals primarily with unfair labor practices, union certification and the jurisdiction of the National Labor Relations Board. Title II deals with labor disputes during a national emergency. Title III encompasses a number of subjects including federal court jurisdiction over breach of contract actions; boycotts; restrictions on political contributions; strikes by government employees. Title IV concerns the establishment of a committee on labor relations. Title V contains a definition section, a savings provision and a separability clause. When one refers to the "Na-

---

deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members."

**3.** It is not clear whether some of District 2, MEBA's members who are not covered by the collective-bargaining agreement here in dispute are nonsupervisory personnel. Isbrandtsen argues that if some members outside the collective-bargaining unit are nonsupervisory personnel, then District 2, MEBA is subject to this court's jurisdiction even if the court were to hold that the "supervisor exclusion"

of § 2(3) of the National Labor Relations Act is applicable to LMRA § 301. In light of the court's ultimate determination, it need not decide this question. For purposes of this motion, the court is assuming that all members of District 2, MEBA are supervisors within the meaning of the National Labor Relations Act.

In Marine Engineers' Beneficial Association v. Interlake Steamship Co., 370 U.S. 173, 188, 82 S.Ct. 1237, 1245, 8 L.Ed.2d 418 (1962), Mr. Justice Douglas made this interesting observation:

"It apparently claims to be a 'labor organization' when it is to its advantage to do so and protests against being so labeled when that position serves its end."

tional Labor Relations Act," therefore, he is referring only to Title I of the Labor Management Relations Act, whereas Titles II, III, IV and V are properly referred to as the "Labor-Management Relations Act."

Definitional difficulties are created by this structure. For example, § 301, the first section of Title III uses the phrase "industry affecting commerce as defined in this Act." To find this definition one looks to Title V, § 501(1). The problem of finding the statutory definition of the word "employee," also used in Title III, § 301 is slightly more involved. Again one looks to the definition section, § 501 (3) of Title V, which provides that the term "employee" "shall have the same meaning as when used in the National Labor Relations Act as amended by this Act." One then looks to Title I and finds in § 2(3) of the amended National Labor Relations Act, 29 U.S.C. § 152(3), a definition of "employee" for purposes of the National Labor Relations Act. There, "employee" is defined as follows:

> "The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless the Act explicitly states otherwise * * * but shall not include * * * any individual employed as a supervisor * * *."

Title I § 2(5) of the amended National Labor Relations Act, 29 U.S.C. § 152(5), defines "labor organization" as follows:

> "The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

LMRA, Title V, § 501(3), 29 U.S.C. § 142(3), provides that the terms "employee" and "labor organization" shall have the same meaning "as when used in the National Labor Relations Act as amended by this Act."

The reading of LMRA § 301 to exclude unions representing supervisors, as suggested by the union, was approved by the Second Circuit Court of Appeals in A. H. Bull Steamship Co. v. National Marine Engineers' Beneficial Ass'n, 250 F.2d 332 (2d Cir. 1957), cert. denied A. H. Bull S. S. Co. v. Seafarers & Intern. Union, 355 U.S. 932, 78 S.Ct. 411, 2 L.Ed.2d 414 (1958). Two other courts, in dictum, so interpret this section. International Organization of Masters, Mates and Pilots of America, Inc. v. National Labor Relations Board, 351 F.2d 771, 775 (D.C.Cir. 1965); Retail Clerks, Local 330, Pharmacists & Retail Drug Store Employees Union v. Lake Hills Drug Co., 49 CCH Lab.Cas. ¶ 18,916 (W.D.Wash.1964). In *Bull*, National MEBA was sued by Bull Steamship Company for specific performance of a collective-bargaining agreement, which contained a no-strike clause. Notwithstanding that clause, it called a strike. Bull Steamship Company moved for an injunction pendente lite enjoining National MEBA from continuing the strike in violation of the no-strike clause. The district court granted the injunction. 156 F.Supp. 190 (E.D.N.Y.1957). On appeal, two questions were presented: (1) whether the dispute was a "labor dispute" within the meaning of the Norris-LaGuardia Act, which prohibits a federal court from enjoining a peaceful strike, and (2) whether LMRA § 301 granted jurisdiction to the federal courts in a suit over a collective-bargaining agreement between an employer and a union covering only supervisory personnel. The Court of Appeals decided that the dispute was a "labor dispute" precluding the issuance of an injunction by the federal courts. It went on to discuss LMRA § 301:

> "The substantial question thus resolves itself into one of fact: Are the members of MEBA covered by the collective bargaining contract with Bull 'supervisors' within the definitions of the Act? If they are 'supervisors,' then MEBA is not a 'labor organization representing employees' for

the purposes of this action. This result follows even if some members of MEBA outside of this bargaining unit are 'employees.' Section 2(5) of the Act, 29 U.S.C. § 152(5), defines a 'labor organization' as 'any organization * * * in which employees participate and which exists for the purpose * * * of dealing with employers concerning * * * conditions of work.' In order to effectuate Congress' avowed intention to remove supervisors from the protections of the National Labor Relations Act, this definition must be interpreted to mean an organization of 'employees' covered by the collective bargaining agreement in question and which exists for the purpose of dealing with *their* employer." 250 F.2d at 336.

If this decision were the last word on this question in this Circuit, this court would be bound to remand this case to the state courts for lack of jurisdiction. However, two subsequent cases in this Circuit have cast doubt on the validity and continued effect of the above quoted views of this Circuit.

In 1959, the National Labor Relations Board found that National MEBA was a "labor organization" within the meaning of the National Labor Relations Act (and, therefore, subject to the provisions of that Act), since National MEBA admitted into membership some engineers who were not supervisors.[4] The Board ordered National MEBA to cease and desist from committing unfair labor practices in violation of § 8(b) (4) (A) and (B) of the National Labor Relations Act, 29 U.S.C. § 158(b) (4) (A) and (B). Upon the Board's petition for enforcement of its order, the court enforced this cease and desist order, concluding that, since National MEBA admitted nonsupervisory personnel into membership, it was a "labor organization" which could be found guilty of an unfair labor practice under the National Labor Relations Act. National Marine Engineers' Beneficial Association v. National Labor Relations Board, 274 F.2d 167 (2d Cir. 1960). Commenting on National MEBA's citation of *Bull* for the proposition that it was not a "labor organization" within the meaning of the National Labor Relations Act, the Court said, 274 F.2d at 174:

> "A. H. Bull Steamship Co. v. National Marine Engineers' Beneficial Association, 2 Cir., 1957, 250 F.2d 332, arose in a different context and under a different section, 29 U.S.C.A. § 185(a) [LMRA § 301], of the National Labor Relations Act; we are not willing to carry what was there said into the determination whether a union is a 'labor organization' under § 8(b). Apparently the Board here took the same view that we do, although its opinion says little on the subject."

Again, in 1961, the Second Circuit had occasion to comment on its decision in *Bull*. National MEBA and other maritime unions called a strike which brought one-half of United States shipping to a halt. Under the national emergency provisions of the LMRA, Title II, §§ 206–210, 29 U.S.C. §§ 176–180, the Government obtained a temporary restraining order signed by District Judge Ryan of the Southern District of New York. National MEBA applied to Circuit Judge Clark, who had written the court's opinion in *Bull*, for a stay of this order. Denying the application in a short opinion, United States v. National Marine Engineers' Beneficial Association, 292 F.2d 190, 192 (2d Cir. 1961), Judge Clark discussed *inter alia,* National MEBA's argument that Title II of the Labor-Management Relations Act does not apply to supervisory personnel, such as the engineers there involved:

> "The basis for this contention is based on statutory definitions and legal precedents to that effect, but applicable directly to other parts of the extensive Labor-Management Relations Act; the claim is that these definitions must necessarily govern this portion of the Act also. But I think

---

4. In the instant case, District 2, MEBA, not National MEBA, was the contracting party.

Judge Ryan correct in ruling against this contention. Here involved is a separately stated and clearly severable part of the Act which in form provides for action against all parties to a labor dispute. Moreover, courts are properly unwilling to accept a perhaps literal reading of a statute which does obvious violence to the legislative intent."

After this determination, Judge Ryan granted an injunction. 196 F.Supp. 374 (S.D.N.Y.1961).

On appeal therefrom, United States v. National Marine Engineers' Beneficial Association, 294 F.2d 385 (2d Cir. 1961), National MEBA presented a syllogistical argument: (1) LMRA § 208 permits federal courts to enjoin a "strike or lockout" under circumstances present in that case; (2) LMRA § 501(2) defines the term "strike" to include "any strike or other concerted stoppage of work by *employees * * *"; (3) LMRA § 501(3) says that "employee" has "the same meaning as when used in the National Labor Relations Act as amended by this Act"; (4) § 2(3) of the National Labor Relations Act as amended, says that the term "employee" shall not include "any individual employed as a supervisor,"; (5) National MEBA represented only supervisors; (6) therefore, a concerted work stoppage by National MEBA is not a "strike" within the meaning of LMRA § 208. The Court of Appeals, in affirming the injunction order, concluded that it was "not permitted to interpret statutes in the mechanical fashion" for which National MEBA contended. Rather, the court found that nothing in the legislative history of the Labor Management Relations Act "conveys any thought that supervisory employees were to be excluded from any provisions outside Title I, the National Labor Relations Act as amended. * * * Nothing * * * suggests that supervisors' unions were intended to be immune from other parts of the Taft-Hartley [Labor Management Relations] Act relating to unions generally." The court then commented on its prior decision in *Bull:*

"We have had previous occasion to consider the status of MEBA * * * under Federal labor legislation. In [*Bull*], these unions contended that because all the members there concerned were allegedly 'supervisors,' the unions were not 'labor organizations' subjected to suit in the Federal courts by § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185; although we indicated some belief that the contention might have merit, the point was not determined, our decision proceeding on the basis that in any event * * * an anti-strike injunction was prohibited by § 4 of the Norris-LaGuardia Act, 29 U.S.C.A. § 104 * * *."

The union argues here, again syllogistically, that (1) LMRA § 301 provides for federal jurisdiction in a suit against a "labor organization representing employees"; (2) LMRA § 501(3) says that "employee" has the same meaning as when used in the National Labor Relations Act as amended by the Labor Management Relations Act; (3) § 2(3) of the National Labor Relations Act provides that the "term 'employee' shall * * * not include any individual employed as * * * a supervisor"; (4) it, at least for purposes of the contract in dispute, represents only supervisors; (5) therefore, it is not a "labor organization representing employees" within the meaning of LMRA § 301. In order to sustain the contention of the union, the court would have to apply the definitions of "employee" and "labor organizations" in Title I, § 2(3) of the National Labor Relations Act, to Title III, § 301 of the Labor Management Relations Act. In its most recent discussion of § 2(3) of the National Labor Relations Act, the Court of Appeals of this Circuit concluded that the supervisor exclusion of § 2(3) is applicable only to Title I. United States v. National Marine Engineers' Beneficial Association, supra.

Furthermore, the history of § 2(3) of the National Labor Relations Act and of LMRA §§ 301 and 501(3) supports the view that the supervisor exclusion of

NLRA § 2(3) does not apply to LMRA § 301. In 1946, Congressman Francis Case introduced a bill to amend the National Labor Relations Act.[5] It was passed by both Houses of the Congress,[6] but vetoed by the President.[7] The Case bill is significant because it contained the predecessor of NLRA § 2(3), LMRA §§ 301 and 501(3). Its parallel to the supervisor exclusion of NLRA § 2(3) provided:

"Supervisory employees: (a) As used in this section the term 'supervisory employee' means an employee whose duties include—

(1) the direction or supervision of the activities of other employees; or

(2) the computation of the pay of other employees; or

(3) the determination of the time worked by other employees, or the supervision or administration of the factors on the basis of which the pay of other employees is computed; but does not include any employee within the purview of the Railway Labor Act.

(b) *Hereafter no supervisory employee shall have the status of an employee for the purposes of sections 7, 8, and 9 of the National Labor Relations Act.*" (Emphasis added.) [8]

The forerunner of LMRA § 301 in the Case bill provided:

"Binding effect of collective-bargaining contracts: All collective-bargaining contracts shall be mutually and equally binding and enforceable either at law or in equity against *each of the parties* thereto, any other law to the contrary notwithstanding. In the event of a breach of any such contract or of any agreement contained in such contract by either party thereto, then,

in addition to any other remedy or remedies existing either in law or equity, a suit for damages for such breach or for injunctive relief in equity may be maintained by the other party or parties in any United States District Court having jurisdiction of the parties. If the defendant against whom action is sought to be commenced and maintained is a labor organization, such action may be filed in the United States District Court of any district wherein any officer of such labor organization resides or may be found." (Emphasis added.)

The Case bill contained a definition section:

"Definitions: As used in this act—

\* \* \* \* \* \*

(b) The terms 'employer', 'employee', 'representative', 'labor organization', and 'labor dispute' shall have the same meaning as in section 2 of the National Labor Relations Act."

If these three provisions had been enacted, the supervisor exclusion would not have been applicable, *i. e.*, federal courts would have had jurisdiction of *all* contract disputes between "each of the parties" to a collective-bargaining agreement because the jurisdiction section of that bill (quoted above as the forerunner of LMRA § 301) is cast in terms of the contracting parties as such, without reference to the status of the employees represented by one of said parties.

When the LMRA was enacted one year after the introduction of the Case bill, it contained, among others, the substance of the three provisions of the Case bill referred to hereinabove. The supervisor exclusion section of the Case bill was included in Title I of LMRA as an amendment to the NLRA § 2(3) definition of "employee." The Case bill definition section was expanded slightly and

---

5. See 92 Cong.Rec. 525 (1946).

6. 92 Cong.Rec. 1070 (1946)' (House of Representatives); 92 Cong.Rec. 5739 (1946) (Senate).

7. For President Truman's veto message see 92 Cong.Rec. 6674 (1946).

8. NLRA § 7 dealt with the right of employees to organize and to bargain collectively. NLRA § 8 specifies the acts which are to be considered unfair labor practices. NLRA § 9 concerns representation elections.

included in Title V as section 501(3). The "suit for breach of contract" section of the Case bill (after going through two changes in language) was included in Title III as section 301. Although, as noted above, this section of the Case bill would have provided for federal jurisdiction in *all* cases of breach of collective-bargaining agreements, two changes were made before the enactment of Title III, section 301. The first change was made to provide for federal court jurisdiction of suits for breach of collective-bargaining agreements only if the *agreement* affected interstate commerce:

> "Any action for or proceeding involving a violation of an agreement between an employer and a labor organization or other representative of employees may be brought by either party in any district court of the United States having jurisdiction of the parties, without regard to the amount in controversy, *if such agreement affects commerce,* or the court otherwise has jurisdiction of the cause." (Emphasis added).[9]

Recognizing that the relationship of the *parties* to interstate commerce was more important than the relationship of the *contract* to interstate commerce, proposed section 301 was redrafted so as to provide for federal jurisdiction over breach of collective-bargaining contracts if the *parties* were in an industry affecting interstate commerce. The language "labor organization representing employees in an industry affecting commerce," would appear to be a more fluent and acceptable manner of expressing the notion that federal courts were to have jurisdiction only if the union involved represented men who performed their labors in an industry affecting interstate commerce. It

is to be noted, further, that LMRA § 301 specifies that "industry affecting commerce" is to be understood "as defined in this Act." If it were intended that the definition sections (*i. e.*, NLRA § 2(3) and LMRA § 501(3)) were applicable automatically to LMRA § 301, the use of the phrase "as defined in this Act" to modify "industry affecting commerce," would be superfluous.

■ Originally, the National Labor Relations Act was interpreted to require an employer to bargain with its supervisory employees; to refuse to do so was held to be an unfair labor practice. Packard Motor Car Co. v. National Labor Relations Board, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). There was an immediate response to this decision.[10] Section 2(3) of the NLRA was amended so as to exclude supervisory employees from the NLRA definition of "employee." 61 Stat. 136, 29 U.S.C. § 152(3) and, as so amended, the NLRA was incorporated into the LMRA of 1947 as Title I. The legislative history is replete with references to the fact that the supervisor exclusion was intended only to remove supervisors from the jurisdiction of the National Labor Relations Board; to withdraw them from the compulsory provisions of the National Labor Relations Act. See H.R. Rept. No. 245 on H.R. 3020, 80th Cong., 1st Sess. 5, 8, 13, 15 (1947); S. Rept. No. 105 on S. 1126, 80th Cong., 1st Sess. 4–5, 19, 28 (1947); Conf. Rept. No. 510 on H.R. 3020, 80th Cong., 1st Sess. 60 (1947); U. S. Code Congressional Service 1947, p. 1135; 93 Cong. Rec. 3533, 3952, 4260 (1947). It does not follow that it was the intention of Congress to exclude from the jurisdiction of a federal court under § 301 of Title III suits for violation of collective-

---

9. H.R.Rept. No. 245 on H.R. 3020, 80th Cong., 1st Sess. (1947) and accompanying bill H.R. 3020. See generally the legislative history as accumulated by Mr. Justice Frankfurter in his dissent in Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 485, 77 S.Ct. 923, 936, 1 L.Ed.2d 972 (1957). Another change to be noted is

the deletion of the provision for injunctive relief.

10. See H.R.Rept. No. 245 on H.R. 3020, 80th Cong., 1st Sess. 14 (1947); S.Rept. No. 105 on S. 1126, 80th Cong., 1st Sess. 3, 4 (1947); National Marine Engineers' Beneficial Ass'n v. National Labor Relations Board, 274 F.2d 167, 173 (2d Cir. 1960).

bargaining agreements merely because the members of the union, which is a party to such an agreement, are supervisory employees, as long as they are in an industry affecting interstate commerce.

"It will be noted, however, that this amendment does not mean that employers cannot still bargain with supervisors and include them, if they see fit, in collective bargaining contracts. All that the proposal does is to prevent employers being compelled to accord supervisors the anomalous status of employees for the purposes of the Wagner [National Labor Relations] Act." S.Rept. No. 105 on S. 1126, 80th Cong., 1st Sess. 19 (1947).

Interpreting the phrase "labor organization representing employees in an industry affecting commerce" in its ordinary meaning comports with the expressed legislative intent of avoiding industrial strife by making labor unions suable as entities in the Federal courts.[11] The court concludes that it has original jurisdiction of this action under LMRA § 301, 29 U.S.C. § 185. The union urges the court to remand to the state court, despite a finding that it has jurisdiction. It advances a most unusual argument. It agrees that, regardless of the forum, federal law should and will be applied. See Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). It assumes that, despite a finding of federal court jurisdiction, this court has the discretionary power to remand and reminds the court that, should it remand, its order would not be subject to review. 28 U.S.C. § 1447(d). What the union wants is an order of remand so as to "avoid the necessity for ultimate review and the possibility of reversal by the Circuit Court of Appeals were the court to deny the motion to remand." Having jurisdiction this court, in my view, has no discretionary power to remand in a case such as this which does not call for the application of the doctrine of abstention. Even if there were such a discretionary power, the court would not exercise it in favor of a remand. The soundness of this court's interpretation of LMRA § 301 should be reviewed, especially in the light of conflicting dicta, within this Circuit, with respect to the interpretation of the very section of the LMRA here involved. The possibility of a reversal plays no part in the court's determination. That possibility is ever present as one of the occupational hazards of a judge of the most inferior of the inferior courts ordained and established by the Congress pursuant to Article III, section 1 of the Constitution of the United States.

The motion to remand is denied. Settle an order on or before ten (10) days from the date hereof.

11. Section 1(b) of the Labor Management Relations Act provides:

"It is the purpose and policy of this Act, in order to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce."

That Congress did not intend to deprive supervisory personnel of the right to bargain collectively, especially supervisors in the maritime industry, see H.R.Rept. No. 245 on H.R. 3020, 80th Cong., 1st Sess. 17 (1947); S.Rept. No. 105 on S. 1126, 80th Cong., 1st Sess. 5 (1947); Conf.Rept. No. 510 on H.R. 3020, 80th Cong., 1st Sess. 60 (1947); 93 Cong. Rec. 3527, 3533, 3952 (1947).