**DISTRICT 2, MARINE ENGINEERS BENEFICIAL ASSOCIATION AFL–CIO, Plaintiff-Appellant,**

v.

**AMOCO OIL COMPANY, Defendant-Appellee.**

No. 76–1024.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 10, 1977.

Decided May 3, 1977.

Gerald B. Lackey, C. Thomas McCarter, Toledo, Ohio, for plaintiff-appellant.

Richard S. Baker, Fuller, Henry, Hodge & Snyder, Toledo, Ohio, Stephen Goldsmith, George J. Zazas, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., for defendant-appellee.

Before CELEBREZZE and LIVELY, Circuit Judges, and SILER,* District Judge.

CELEBREZZE, Circuit Judge.

This case presents the single issue of whether, under section 301(a) of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a) (1970),[1] a federal court has jurisdiction over the subject matter of a breach of contract action by a union, purporting to represent a bargaining unit comprised exclusively of supervisors, against an employer in an industry affecting commerce.[2] District 2, Marine Engineers Beneficial Association, AFL–CIO (MEBA), sued Amoco Oil Company (Amoco) in federal district court seeking injunctive relief and damages for breach of an alleged agreement by Amoco to conduct an election to determine the representational status of officers serving on three vessels which it operated on the Great Lakes. Both parties conceded that the designated officers were supervisors within the meaning of § 2(11), 29 U.S.C. § 152(11), and that they were involved in an "industry affecting commerce."

A consolidated hearing was held on MEBA's request for both a preliminary and permanent injunction. Subsequently, the District Court filed a memorandum opinion and order dismissing the action for want of subject matter jurisdiction. The Court reasoned that, because § 501(3) mandates that the subchapter II definition of "employee" apply throughout the Act, and § 2(3) expressly excludes supervisors, as defined by § 2(11), MEBA was not a "labor organization representing *employees*" under section 301(a). Therefore, in the absence of diversity of citizenship between the parties, it was barred from suing in federal court to enforce the putative contract. On appeal, MEBA contends that this syllogistic interpretation of the statute is erroneous as a matter of law.

The problem of statutory construction raised by this appeal can be traced to the involuted structure of the LMRA. Under the precursor National Labor Relations Act of 1935, 49 Stat. 449, popularly referred to as the Wagner Act, supervisors were implicitly subsumed within the definition of covered employees contained in § 2(3). When the Wagner Act was incorporated as Title I of the LMRA in 1947, § 2(3) was amended to exclude supervisors. 29 U.S.C. § 152(3). New national labor law provisions, unrelated to Title I, were appended as Titles II through V of the Act. For reasons of drafting economy, Title V includes § 501(3), 29 U.S.C. § 142(3), which plainly incorporates by reference eight definitions found in Title I, including the § 2(3) definition of "employee" *as amended.*

The dispositive question is whether Congress intended § 2(3) to exempt supervisors from coverage under *all* of the Acts provisions, or whether the supervisory exemption was to be limited to Title I. If the will of Congress on this point is clearly discernible, we need go no further. Only if the legislative history of the LMRA's definitional

---

* The Honorable Eugene E. Siler, Jr., Judge, United States District Court for the Eastern and Western Districts of Kentucky, sitting by designation.

1. 61 Stat. 136, popularly known as the Taft-Hartley Act.

2. Section 301(a) of the Labor Management Relations Act provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

amendments to the Wagner Act fails to expose the rationale underlying the exclusion will we consider whether the District Court's literal reading of 29 U.S.C. § 142(3) is compatible with the policy objectives of section 301(a).

■ The legislative history of the Labor-Management Relations Act makes it abundantly clear that Congress wished to insulate an employer's interaction with its supervisors from only those constraints imposed by Title I. We can find no evidence which favors an extension of this partial exemption to place unions of supervisors entirely outside the purview of the Act. A comparison of corresponding sections of the House and Senate Reports on the proposed bill conclusively reveals the specific intent of Congress:

> It will be noted, however, that this amendment [defining supervisors for purpose of their exclusion from the class of covered employees] does not mean that employers cannot still bargain with such supervisors and include them, if they see fit, in collective bargaining contracts. All that the proposal does is to prevent employers being compelled to accord supervisors the anomalous status of employees *for the purposes of the Wagner Act.* (emphasis added).

S.Rep.No.105, 80th Cong., 1st Sess. 19 (1947). Comparable language appears at several points in the House Report:

> (5) It [the proposed bill] exempts supervisors *from the compulsory features of the National Labor Relations Act.* (emphasis added).

H.Rep.No.245, 80th Cong., 1st Sess. 5 (1947). The bill, by excluding foremen and other supervisory personnel from the definition of "employee," *deprives the Board* [the National Labor Relations Board] *of jurisdiction over them.* (emphasis added).

*Id.* at 14.

The limited scope of the supervisor exclusion is echoed in floor debate on the measure. For example, Senator Taft, co-author of the Act, in assessing the final impact of the exclusion, noted that supervisors "do not have the protection of the National Labor Relations Act. * * * [T]hey are generally restored to the basis which they enjoyed before the passage of the Wagner Act." 93 Cong.Rec. 3952 (1947). That Congress was solely intent upon wresting jurisdiction over supervisors from the NLRB is evident from the fact that a provision which would have nullified the Board's recognition of supervisors as statutory employees under the Wagner Act, a decision affirmed by the Supreme Court in *Packard Motor Car Co. v. NLRB,* 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947), was included in the Case Bill. This bill passed both houses of the 79th Congress by substantial margins, but was vetoed by the President. The Case Bill is devoid of any language which might be construed as exempting unions of supervisors from its provisions.

Our reading of the legislative history is in accord with precedents from the only other circuits to have squarely addressed this issue. In two decisions rendered at different stages of the same case, the Second Circuit held that the fact that a striking maritime union represented only supervisors did not immunize it from the "National Emergencies" provisions of the Labor-Management Relations Act, 29 U.S.C. §§ 176–180. *United States v. National Marine Engineers Beneficial Association,* 292 F.2d 190 (2d Cir. 1961), and *United States v. National Marine Engineers Beneficial Association,* 294 F.2d 385 (2d Cir. 1961). In the second opinion, Judge Friendly summarized the legislative history of the excluding amendment as being:

> replete with references showing that both those who proposed the change as to supervisors and those who opposed it understood it to relate to the provisions of Title I, the original National Labor Relations Act, concerning collective bargaining and related matters. * * * Nothing * * * suggests that supervisors' unions were intended to be immune from other parts of the Taft-Harley Act relating to unions generally.

294 F.2d at 391–392.

In two subsequent cases federal jurisdiction under section 301(a) has been sustained in

suits brought against unions of supervisors including MEBA. *Dente v. International Organization of Masters, Mates and Pilots, Local 90,* 492 F.2d 10 (9th Cir. 1974); *Isbrandtsen Co., Inc. v. District 2, Marine Engineers Beneficial Association,* 256 F.Supp. 68 (E.D.N.Y.1966). The Third Circuit has approvingly commented upon the technique of statutory construction employed in this line of cases. *See Crilly v. Southeastern Pennsylvania Transportation Authority,* 529 F.2d 1355, 1359–1360 (3rd Cir. 1976) (affirmed on other grounds).

In an effort to blunt the impact of these precedents, Amoco argues that they are compatible with the District Court's dismissal of the action here. We are urged to accept the proposition that supervisors are excluded from coverage under the Act until such time as an employer voluntarily recognizes them as statutory "employees" by entering into a collective bargaining contract with them. Amoco goes so far as to concede that:

> if the employer elects to voluntarily recognize a union of supervisors and enters into a contract with such a union, then the protections of section 301 to promote labor peace are invoked; or at the very least, both parties would be estopped from denying the coverage of the act.

■ Although we agree that employers are not compelled by the terms of the Act to recognize supervisors or their representatives for the purpose of collective bargaining, *see* 29 U.S.C. § 164(a),[3] and *Hanna Mining Co. v. District 2, Marine Engineers Beneficial Association, AFL–CIO,* 382 U.S. 181, 188–189, 86 S.Ct. 327, 15 L.Ed.2d 254 (1965), we are neither persuaded that for-mal recognition of a bargaining representative is a prerequisite to section 301(a) jurisdiction nor, assuming recognition is required, that it must be manifest by a collective bargaining agreement. Section 301(a) is silent regarding any recognitional preconditions. The Supreme Court has rejected analogous challenges to jurisdiction under sections 301 and 302 based upon the minority representational status of the unions involved. *See Retail Clerks International Association, Local Unions Nos. 128, 633 v. Lion Dry Goods, Inc.,* 369 U.S. 17, 29, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962), and *United States v. Ryan,* 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956). Section 301(a) is not limited on its face to the adjudication of claims arising under collective bargaining agreements. The Supreme Court has broadly construed the term "contract" as it appears there to include any "agreement between employers and labor organizations significant to the maintenance of labor peace between them." *Retail Clerks, supra,* 369 U.S. at 28, 82 S.Ct. at 548.

■ We conclude that "recognition" of a union of supervisors, for the limited purpose of invoking section 301(a) jurisdiction, is evidenced by the existence of any contract cognizable under the *Retail Clerks'* standard. We note that Amoco tacitly accepts this premise by arguing that in this case dismissal was warranted because no agreement of *any* kind obtained between the parties. The issue of the existence of the contract is not properly before us, however, because the District Court's jurisdictional disqualification of MEBA obviated its making factual findings on substantive questions.

\*  \*  \*  \*  \*  \*

What the bill does is to say what the law always has said until the Labor Board \* \* changed the law: That no one, whether employer or employee, need have as his agent [i.e., supervisor] one who is obligated to those on the other side, or one whom, for *any* reason, he does not trust. H.Rep.No.245, 80th Cong., 1st Sess. 17 (1947).

---

**3.** Section 14(a) [29 U.S.C. § 164(a)] of the Labor Management Relations Act provides in pertinent part:

> \* \* \* no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining.

That Congress intended recognition of supervisors by employers for bargaining purposes to be entirely voluntary is forcefully conveyed by the following excerpt from the House Report on the LMRA:

■ We hold that a union representing a bargaining unit comprised exclusively of supervisors, within the meaning of 29 U.S.C. § 152(11), is a "labor organization representing employees" entitled to invoke federal jurisdiction under section 301(a). We reverse the judgment of the District Court and remand the case for further proceedings consistent with this opinion.

SILER, District Judge.

I respectfully dissent. The district court was correct in its decision that it had no jurisdiction over this matter.

The statutes are clear in their meaning. The district court has jurisdiction in "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, . . ." 29 U.S.C. § 185(a). The definition of "employee" in the chapter is found in 29 U.S.C. § 142(3), where it states that "employee" has "the same meaning as when used in subchapter II of this chapter as amended by this chapter."

Next, one goes to subchapter II of that chapter to find "employee" in 29 U.S.C. § 152(3) to exclude specifically "any individual employed as a supervisor". Finally, "supervisor" is defined in 29 U.S.C. § 152(11), which is not quoted here because the parties have stipulated that the designated officers in this case were, in fact, supervisors under this definition.

Admittedly, Congress has indicated its intent to some degree, but where the statute is so clear, the intent must be subservient to the language in the Act itself. Otherwise, we may be giving " 'point to the quip that only when legislative history is doubtful do you go to the statute' ". *United States v. Bass,* 404 U.S. 336, 339, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), quoting Frankfurter, "Some Reflections on the Reading of Statutes," 47 Col.L.Rev. 527, 543 (1947). As in *Bass,* we have a case where Congress asserted its intent, but it was not reflected in the ultimate legislation. Thus, the statute there, being criminal in nature, was narrowly construed in favor of the defendant.

We do not have such a requirement at law to construe narrowly this labor statute, but when Congress establishes jurisdictional statutes, they should be confined to the precise limits as defined. See *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971).

Here, the majority opinion quotes from the Congressional reports on the Taft-Hartley Act (LMRA) of 1947, but those reports only relate that the Act takes supervisory employees from the jurisdiction of the National Labor Relations Board. But that still is not an all-inclusive explanation, for this same definition of employees transcends the National Labor Relations Act by virtue of 29 U.S.C. § 142(3), which incorporates the definition throughout chapter 7 of Title 29.

Assuredly, this is a case of first impression in this Court. My literal interpretation of the Act is criticized in *Dente v. International Organization of Masters, Mates and Pilots, Local 90,* 492 F.2d 10 (9th Cir. 1973), cert. denied, 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974), but Judge Browning apparently had problems with the majority's interpretation that the district court had jurisdiction. *Id.* at 12 (concurring opinion). The Second Circuit's decisions are rather diverse but one stated the district courts have no jurisdiction under 29 U.S.C. § 185 in this type of case. See *A. H. Bull Steamship Co. v. National Marine Engineers' Beneficial Ass'n,* 250 F.2d 332 (2d Cir. 1957), cert. denied, 355 U.S. 932, 78 S.Ct. 411, 2 L.Ed.2d 414 (1958). However, that decision was eroded through subsequent dictum in *United States v. National Marine Engineers' Beneficial Ass'n,* 294 F.2d 385 (2d Cir. 1961); *United States v. National Marine Engineers' Beneficial Ass'n,* 292 F.2d 190 (2d Cir. 1961); and *National Marine Engineers Beneficial Ass'n v. NLRB,* 274 F.2d 167 (2d Cir. 1960). See also *Isbrandtsen Co., Inc. v. District 2, Marine Engineers Beneficial Ass'n,* 256 F.Supp. 68 (E.D.N.Y.1966).

On the other hand, there is dictum from *International Organization of Masters,*

*Mates & Pilots v. NLRB,* 122 U.S.App.D.C. 74, 78, 351 F.2d 771, 775 (1965), that

> [A] collective bargaining agreement entered into by MMP on behalf of Local 47 would not be within section 301 of the Taft-Hartley Act, . . . 29 U.S.C. § 185 (1958), since that section deals only with "contracts between an employer and a labor organization *representing employees * * *.*" (Emphasis added.) Such a construction of this language would seem to be eminently correct in the context of section 301.

I would follow this language and the explicit language of the statute to uphold the decision of the district court in dismissing the suit.