Mr. Albert Z. ELKES, Plaintiff,

v.

B'NAI B'RITH INTERNATIONAL, Defendant.

Civ. A. No. 80–3321.

United States District Court, District of Columbia.

June 4, 1982.

Robert B. Fitzpatrick, Washington, D. C., for plaintiff.

Mozart G. Ratner, David M. Ermer, Washington, D. C., for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter is before the court on defendant's motion for summary judgment. Defendant contends that section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, compels dismissal of this suit because plaintiff has not exhausted the exclusive arbitration process for resolving his entitlement to severance pay. The court agrees.

*Background*

Plaintiff's complaint seeks $36,500 in severance pay which plaintiff claims he is owed under the terms of a collective bargaining agreement between defendant (BBI) and the Executive Staff Association of B'nai B'rith and B'nai B'rith women (Staff Association). The complaint is grounded in diversity jurisdiction.

Defendant's motion for summary judgment contends that plaintiff's invocation of diversity jurisdiction represents an illegitimate effort to have this court apply local contract law principles to plaintiff's claim for severance pay. Instead, defendant urges, plaintiff's claim stems from a collective bargaining agreement and, therefore, the pertinent substantive law is dictated by section 301(a) of the LMRA. Under principles emanating from section 301(a), if a collective bargaining agreement establishes an exclusive method for arbitrating dis-

putes, the employee must exhaust those procedures before initiating suit in federal or state court. *See Hines v. Anchor Motor Freight*, 424 U.S. 554, 559, 96 S.Ct. 1048, 1053, 47 L.Ed.2d 231 (1976); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). If a complaining employee "resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted." *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967). An exception to this general rule applies when the union has complete authority to trigger the arbitration procedures. If the union wrongfully refuses to bring the employee's grievance to arbitration, the employer cannot assert as a defense to a breach of contract suit that the employee has failed to exhaust administrative remedies. *Id.*, at 185, 87 S.Ct. at 914. A union's wrongful refusal to bring a case to arbitration is not proven by a simple demonstration that the employee's grievance is meritorious; rather, in order to document that the union has breached its duty of fair representation, the employee must persuade the court that the union's decision was "arbitrary" or involved "bad-faith conduct". *Id.*, at 193, 87 S.Ct. at 918.

The collective bargaining agreement at issue, according to defendant, incorporates an exclusive dispute resolution mechanism. In particular, the 1978 agreement provides that grievances against BBI may proceed to binding arbitration only with the assistance of the Staff Association. Under Art. XXII(4) of the agreement, the Staff Association is required to process a grievance, if "the grievance has merit." When plaintiff presented his grievance to the Executive Committee of the Staff Association, it declined to present the grievance to BBI for arbitration. Plaintiff did not appeal this

decision to the full membership of the SA, as he was entitled to do. Accordingly, defendant maintains, plaintiff has failed to exhaust his internal arbitration remedies.[1] Since plaintiff nowhere alleges that this failure was due to the union's breach of its duty of fair representation, this suit must be dismissed.

Plaintiff's opposition to the motion for summary judgment focuses upon the applicability of section 301(a) jurisprudence to this dispute. Plaintiff contends that the SA does not qualify as a "labor organization representing employees" within the meaning of section 301(a) and, therefore, the exhaustion bar flowing from that provision is not material. Because there is dicta in this Circuit suggesting that if an organization's membership is composed entirely of managerial and supervisory personnel, section 301(a) is not applicable, *see International Organization of Masters, Mates & Pilots of America v. NLRB*, 351 F.2d 771 (D.C.Cir.1965), the court authorized discovery into the composition of the Staff Association. That discovery has now been completed.

*Discussion*

■ As the preceding discourse reveals, the core issue in this case is whether the SA is a "labor organization representing employees" within the coverage of section 301(a) of the LMRA. If it is, then federal law necessitates dismissal of this action by virtue of plaintiff's failure to exhaust exclusive arbitration remedies. If the SA is not covered by section 301, then local law will apply under ordinary diversity jurisdiction principles, and there may be no exhaustion bar to plaintiff's claims.

The LMRA of 1947 was preceded by the National Labor Relations Act (NLRA). When the LMRA was enacted, it incorporated various provisions of the NLRA.

---

1. Plaintiff disputes that the procedure embodied in the 1978 agreement establishes the appropriate process for achieving arbitration of his grievance. Rather, plaintiff contends that the 1964 agreement delineates the required mechanism, and does not demand that employees invoke the assistance of the Staff Associa-

tion. This contention, even if accurate, does not assist plaintiff. There is no allegation that plaintiff ever attempted to present his grievance for arbitration personally. Therefore, there was no exhaustion of established, exclusive procedures even if the 1964 agreement was of controlling significance.

These former provisions of the NLRA became Title I of the LMRA. The remaining Titles of the LMRA contain entirely new directives. Section 301(a) is contained in Title III of the LMRA and provides:

Suit for violation of contracts between an employer and a *labor organization representing employees* in an industry affecting commerce ... may be brought in any District Court in the United States....

29 U.S.C. § 185(a) (Emphasis supplied).

Title V of the LMRA provides that the definitions of the terms "employee," "labor organization," and "supervisor," as used in Title III, are those enumerated in Title I, the revised NLRA. 29 U.S.C. § 142(3). Title I, in turn, provides that the term "employee ... shall include any employee ... but shall not include ... any individual employed as a supervisor...." 29 U.S.C. § 152(3). The term "supervisor" is defined as

any individual having authority, in the interest of the employer to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing, the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11).

A literal reading of the relevant provisions, therefore, may imply that section 301(a)'s jurisdictional base does not encompass grievance actions brought by supervisory or managerial personnel, but is limited to suits of "employees," as that term is narrowly defined in the NLRA. This is apparently the approach that was favored by our Circuit Court in *International Organizations of Masters, Mates & Pilots of America (MMP) v. NLRB, supra.* That case involved review of an NLRB cease and desist order directed at MMP, outlawing a secondary boycott. In considering the validity of the cease and desist order, the court analyzed whether MMP was a "labor organization" within the meaning of section 8(b) of the LMRA, 29 U.S.C. § 158(b)(4)(A), one of the secondary boycott provisions of the Act. Despite the fact that the particular local involved consisted entirely of supervisory personnel, the court concluded that MMP was a "labor organization" because it contained some "employees," as that term is defined in section 2(5) of the NLRA. *MMP v. NLRB, supra,* 351 F.2d at 775. As an aside, the court noted that "[i]t may well be, on the other hand, that a collective bargaining agreement entered into by MMP on behalf of Local 47 would not be within section 301 of the ... [Act] ... since that section deals only with 'contracts between an employer and a labor organization *representing employees*'...." *Id.* (Emphasis in original). The court reflected that this construction seemed "eminently correct" but emphasized that "[i]n any event, the construction of section 301 has no necessary bearing on the present question whether MMP may be liable as a 'labor organization.'" *Id.*

The Court of Appeals for this Circuit, therefore, has suggested, in dicta, that section 301(a) would not cover a collective bargaining agreement entered into by a labor organization constituted entirely of non-"employees" or supervisory personnel. This interpretation of section 301(a), however, has been rejected by every Circuit Court squarely confronting the issue.

The Second Circuit has had a somewhat confusing history with regard to the question at hand. Initially, the court approved a construction of section 301(a) excluding unions representing supervisors. In *A. H. Bull Steamship Co. v. National Marine Engineers' Beneficial Ass'n. (NMEBA),* 250 F.2d 332 (2d Cir. 1957), the court stated:

The substantial question thus resolves itself into one of fact: Are the members of MEBA covered by the collective bargaining contract with Bull 'supervisors' within the definitions of the Act? If they are 'supervisors,' then MEBA is not a 'labor organization representing employees' for the purposes of this action.

250 F.2d at 336. Subsequently, however, the Second Circuit retreated from this posi-

tion. In *United States v. NMEBA*, 292 F.2d 190 (2d Cir. 1961), the District Court had issued a temporary restraining order directed at a strike conducted by NMEBA. NMEBA applied to Circuit Judge Clark for a stay. In denying the stay, Judge Clark, the author of the *Bull* decision, noted:

> The basis for this contention is based on statutory definitions and legal precedents to that effect, but applicable directly to other parts of the extensive Labor-Management Relations Act; the claim is that these definitions must necessarily govern this portion of the Act also. But I think Judge Ryan was correct in ruling against this contention. Here involved is a separately stated and clearly severable part of the Act which, in form, provides for action against all parties to a labor dispute. Moreover, courts are properly unwilling to accept a perhaps literal reading of a statute which does obvious violence to the legislative intent.

*Id.*, at 192.

In reviewing the District Court's subsequent issuance of an injunction, the Second Circuit concurred with Judge Clark's analysis. *United States v. NMEBA*, 294 F.2d 385 (2d Cir. 1961). The court rejected NMEBA's argument that section 501(3) of the LMRA, which authorizes the enjoining of strikes "by employees" does not encompass strikes by supervisors by virtue of section 2(3) of the NLRA. The court labeled NMEBA's approach excessively "mechanical," indicated that *Bull* had not definitively resolved the issue, and proceeded to examine the legislative history of the LMRA. *Id.* at 392. The court found the history of the Act

> replete with references showing that both those who proposed the change as to supervisors and those who opposed it, understood it to relate to the provisions of Title I, the original National Labor Relations Act, concerning collective bargaining and related matters. . . . Nothing suggests that supervisors' unions were intended to be immune from other parts of the Taft-Hartley Act relating to unions generally.

*Id.*, at 391–92. More recently, the court remarked that it has now been definitively resolved in the Second Circuit that section 301(a) jurisdiction exists with respect to labor organizations representing supervisory employees. *See Globe Seaways, Inc. v. National Marine Engineers Beneficial Ass'n.*, 451 F.2d 1159, 1160 n.1 (2d Cir. 1971), citing with approval *Isbrandtsen Co. v. District 2, Marine Engineers Beneficial Ass'n.*, 256 F.Supp. 68 (E.D.N.Y.1966).

The Sixth Circuit, following a similar analysis of the legislative history, came to an identical conclusion as the Second Circuit regarding the scope of section 301(a). In *District 2, Marine Engineers Beneficial Association v. Amoco Oil Co.*, 554 F.2d 774 (6th Cir. 1977), the court considered whether, under section 301(a), a federal court has jurisdiction over a breach of contract action by a union representing a bargaining unit composed entirely of supervisors against an employer engaged in an industry affecting commerce. In arriving at an affirmative answer, the court stressed that

> [t]he legislative history of the Labor Management Relations Act makes it abundantly clear that Congress wished to insulate an employer's interaction with its supervisors from only those constraints imposed by Title I. We can find no evidence which favors an extension of this partial exemption to place unions of supervisors entirely outside the purview of the Act.

554 F.2d at 777.

Finally, in *Dente v. International Organization of Masters, Mates and Pilots, Local 90*, 492 F.2d 10 (9th Cir. 1974), the Ninth Circuit held that a district court was vested with jurisdiction under section 301(a) to resolve plaintiff's action for damages against MMP, a labor organization comprised solely of supervisory personnel. Rejecting the "mechanical approach to statutory construction" that would place supervisory unions completely outside the LMRA, the court expressed its conviction that "Congress, by eliminating supervisory employees from the bargaining and organizational protection of subchapter II, did not intend to deprive

members of 'supervisory unions' of the rights secured by section 301." 492 F.2d at 12. *See also Crilly v. Southeastern Pennsylvania Transportation Authority*, 529 F.2d 1355, 1359–60 (3rd Cir. 1976) (indicating concurrence with courts finding that section 301(a) covers supervisors' unions).

Thus, the three Circuit Courts directly considering the issue of section 301(a)'s application to labor organizations composed entirely of supervisors have refused to adopt a literal reading of the circular statutory provisions involved. Instead, these courts have undertaken comprehensive reviews of the legislative history of the LMRA in order to divine Congress' intent and have come to the unanimous conclusion that the limiting definition of employees in section 152(3) of the NLRA was not meant to apply to section 301(a). An independent appraisal of both the statutory language of section 301(a) and the legislative history of the LMRA convinces the court that this conclusion is correct.

It is a cardinal principle of statutory construction that analysis must "begin with the language of the statute itself," *Dawson Chemical Co. v. Rohm & Haas Co.*, 448 U.S. 176, 187, 100 S.Ct. 2601, 2608, 65 L.Ed.2d 696 (1980), and "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Bread Political Action Committee v. FEC*, —— U.S. —— at ——, 102 S.Ct. 1235 at 1238, 71 L.Ed.2d 432 (1982), quoting *Consumer Product Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In this case, the pertinent provisions are far from pellucid. The syllogistic approach urged by plaintiff requires the court to traverse a rather convoluted statutory path. A definition of "employee" is not contained in Title III where section 301 resides. Rather, one must proceed to the general definition provision, section 501(3) of Title V, 29 U.S.C. § 142(3). This provision still does not contain a definition of "employee" but provides that the term "shall have the same meaning as when used in subchapter II of this chapter as amended by this chapter." 29 U.S.C. § 142(3). Finally, when one turns to subchapter II, section 2(5) of the amended NLRA, one discovers a definition of "employee" which excludes "an individual employed as a supervisor." 29 U.S.C. § 152(3). It is difficult to conclude that this winding statutory route divulges Congress' unequivocal intent to exempt organizations representing supervisors from section 301(a) jurisdiction.

The water becomes even murkier when one considers the wording of section 301(a) itself. The provision provides for jurisdiction over suits "between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter." 29 U.S.C. § 185(a) (Emphasis supplied). If Congress intended that the specific definition provisions be universally applied throughout section 301, qualifying the language "industry affecting commerce" with the phrase "as defined in this Act," would be redundant. *Isbrandtsen Co. v. MEBA, supra*, 256 F.Supp. at 77. If it is presumed that Congress did not include superfluous language in section 301, the phrase "labor organizations representing employees" was not intended to incorporate the narrow definitions enumerated in 29 U.S.C. § 152(5).

Thus, the language and architecture of the LMRA are not receptive to a straightforward solution to the problem of statutory construction facing the court. In contrast, the legislative history of the Act reflects an unambiguous intent to exclude supervisors only from the unfair labor practice and related provisions of the NLRA as amended. The Senate Report on the proposed legislation explains the provision defining employees so as to exclude supervisors:

It will be noted, however, that this amendment does not mean that employers cannot still bargain with such supervisors and include them, if they see fit in collective bargaining contracts. All the proposal does is to prevent employers from being compelled to accord supervisors the anomalous status of employees for the purposes of the Wagner Act.

S.Rep.No.105, 80th Cong., 1st Sess. 19 (1947). Similarly, the House Report stresses that the proposed definition in section 2(5) only "exempts supervisors from the compulsory features of the National Labor Relations Act" over which the NLRB has jurisdiction. H.Rep.No.245, 80th Cong., 1st Sess. 5, 14 (1947). *See also* H.Conf.Rep. No.510 on H.R. 3020, 80th Cong., 1st Sess. 60 (1947). That Congress sought to exclude supervisors only from the requirements of the revised NLRA is also evident from remarks made by individual legislators responsible for the Act's evolution and enactment. For example, Senator Taft, co-author of the Act, noted that supervisors "do not have the protection of the National Labor Relations Act.... They are generally restored to the basis which they enjoyed before the passage of the Wagner Act." 93 Cong.Rec. 3952 (1947). This notion of the limited scope of the supervisor exemption reverberates throughout the floor debates on the LMRA. *See, e.g.,* 93 Cong.Rec. 3533 (Representative Hartley); 93 Cong.Rec. 3322 (Senator Wagner); 93 Cong.Rec. 4260 (Senator Ellender); 93 Cong.Rec. 4490 (Senator Pepper); 93 Cong. Rec. 4566 (Senator Johnson); 93 Cong.Rec. 5105 (Senator Murray); 93 Cong.Rec. 5146 (Senator Ball). Nothing in the legislative history implies that labor organizations representing supervisors were meant to be excluded from provisions outside Title I, the NLRA as amended, or from section 301(a) in particular.

Definitive proof of Congress' intent is derived from the predecessor to the LMRA as adopted, the Case bill. That bill would have expressly deprived the NLRB of jurisdiction over supervisors, apparently in response to the Supreme Court's decision in *Packard Motor Co. v. NLRB*, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). The forerunner of section 301 in the Case bill contained no phrase equivalent to the one troubling the court at present, that could be interpreted as excluding organizations com-

posed of supervisors. The Case bill passed both houses of Congress but was vetoed by the President. In this context, the decision to add the phrase "labor organization representing employees in an industry affecting commerce" is most logically viewed as an effort to clarify the jurisdictional prerequisite that the pertinent labor organization affect interstate commerce. If Congress had intended to incorporate an entirely new limitation on section 301's coverage not contained in the Case bill passed the year before, this fact would, presumably, be discernible in the legislative history of the Act.

Overall, the legislative history of the LMRA resolves any doubts on the question of section 301(a)'s applicability to supervisors' unions in favor of such jurisdiction. Congress' intent in enacting the supervisor exception in section 2(3) is expressed uniformly and often; Congress desired to exempt an employer's interaction with its supervisors from only those obligations imposed by Title I, over which the NLRB has jurisdiction. *MEBA v. Amoco Oil Co., supra,* 554 F.2d at 777. Plaintiff's hypertechnical construction of the Act must be rejected in the face of "clear evidence" of Congress' contrary intent. *United States v. Apfelbaum,* 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980); *Consumer Product Safety Comm'n. v. GTE Sylvania, supra,* 447 U.S. at 108, 100 S.Ct. at 2056.

Because the court concludes that section 301(a) applies to the dispute between plaintiff, a member of a labor organization representing employees and the defendant/employer, it necessarily follows that the instant suit, invoking diversity jurisdiction, must be dismissed. The collective bargaining agreement provides for an exclusive method of dispute resolution. Plaintiff has not exhausted this arbitration and grievance mechanism, nor has he alleged that the Staff Association breached its duty of fair representation. Plaintiff cannot avoid these obligations by filing a diversity suit.[2]

**2.** If plaintiff is correct that he was not required to proceed through the Staff Association, his recourse was to proceed, under section 301 against the defendant, alleging a violation of

the duty to arbitrate plaintiff's grievance. *See, e.g., United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1959).

Thus, defendant's motion for summary judgment is granted and this action is dismissed.

## DEFENDANT'S MOTION FOR RECONSIDERATION

On November 5, 1981, the court granted plaintiff's motion for a protective order, holding that defendant was not permitted to engage in certain discovery into the subjective good faith of plaintiff's attorneys in initiating this suit. The court ruled that defendant failed to present a *prima facie* case "that plaintiff purposefully brought a diversity suit under a common-law contract theory despite his and his attorney's awareness that the only available remedy was under section 301 of the Labor Management Relations Act. . . ." The court also ordered plaintiff to submit a statement of costs incurred in opposing defendant's discovery efforts. The plaintiff has submitted that statement.

Defendant has now moved for a reconsideration of the court's determination that defendant failed to establish that the instant suit was filed in bad faith and specifically requests that the court modify its decision to award attorneys fees and costs to plaintiff.

After reviewing the extensive record in this case, the court reaffirms its prior decision that there is no evidence to suggest that this suit was brought in subjective or objective bad faith. The dispositive issue of the applicability of section 301 to the Staff Association is obviously a difficult one; there is no basis for concluding that plaintiff filed this suit with the knowledge and belief that he could not validly invoke diversity jurisdiction. Furthermore, the extensive and conflicting affidavits submitted by the parties concerning the nature of the positions held by members of the Staff Association reflect genuine factual questions as to whether all the members during the relevant time interval were supervisory or managerial personnel. Accordingly, the court denies defendant's motion for reconsideration. Defendant is not entitled to have attorneys' fees and costs assessed against plaintiff and discovery into plaintiff's attorneys' subjective intent is not permitted. Finally, since the court concludes that defendant's discovery efforts were not "substantially justified," Fed.R.Civ.P. 37(a)(4), the costs reasonably incurred by plaintiff in attaining the protective order from this court will be assessed against defendant.